St. Louis Brewing Association, *Appellant*, v. The City of St. Louis.

140  419
90a 304

Division One, July 6, 1897.*

1. **Compulsory Payments**: WATER RATES. Where a city exacts a certain water rate and a manufactory pays it under a penalty that the water will be turned off unless the charges are paid, the payment is compulsory, and if the charge proves to be excessive, the factory may recover the excess by suit.

2. **Contract**: USE OF METER IN SUPPLYING WATER. Plaintiff owned sixteen breweries in the defendant city, by whose ordinance it was provided that the rate for supplying water "for purely manufacturing purposes" should be one and one fourth cents per hundred gallons if the amount used annually was less than 50,000,000 gallons, and one cent if over that amount. *Held*, that the ordinance meant that the plaintiff should have its water at one cent per one hundred gallons if the amount used in all its breweries exceeded 50,000,000 gallons, and was not meant to imply that that amount must be used from *each meter* in the various factories.

3. **Construction of Ordinance Aided by Amendment**. If any doubt exists that such is the proper meaning of the ordinance, that doubt is removed by the construction the city put on it when it amended it so as to require the consumption of 50,000,000 gallons by a "manufacturing plant" when "located in one or more adjoining blocks" before it could obtain water at one cent per hundred gallons.

4. **Water Rates**: SUBJECT OF CONTRACT. The obligation of one to pay for water supplied by the city, rests upon contract, and is not founded on the city's taxing power.

5. **City in Private Capacity**: GAS AND WATER. In the matter of furnishing to its citizens gas and water, a city acts in a private rather than a governmental capacity, and has the same right to make reasonable charges therefor that a private corporation has when serving the public.

*NOTE.—Decided November 11, 1896. Rehearing granted and first opinion confirmed July 6, 1897.

6. **Water Rates:** SUBJECT OF CONTRACT: CONSTITUTIONAL UNIFORMITY. A water rate being in the nature of a toll and not a tax, higher charges to one person than to another are not prohibited by that part of the Constitution which says taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

7. **Discrimination Among Water Takers.** The city charter forbids exceptional discriminating water rates among its citizens, but by ordinance manufacturers are given a lower rate than persons engaged in other business pursuits, regardless of the amount of water used, and the manufacturer who consumes 50,000,000 gallons annually is given a lower rate than those who use a less quantity. *Held*, as the rate is given alike to all persons who fall within the class, there is no exceptional discrimination in these classifications, nor anything unreasonable, unequal, or unjust.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*Kehr & Tittmann* for appellants.

(1) Payment of water license under threat of turning off the water in case of refusal is payment under compulsion, and if the charge is excessive the excess may be recovered. *Westlake v. St. Louis*, 77 Mo. 47. (2) Under section 1698 of the Revised Ordinance of 1887 but two things are necessary to bring the water taker within the price of one cent per one hundred gallons, viz.: *First.* That the water is used for purely manufacturing purposes; and *second*, that the quantity used exceeds fifty million gallons annually. Rev. Ord. 1887, secs. 1697 and 1698. (3) The city controls and distributes the water supply to the inhabitants of St. Louis in its political or governmental capacity. Charter of St. Louis, art. 1, sec. 1; art. 7, secs. 1, 4, 6, 7, and 12. Water rates are fixed for the purpose of revenue, and are a tax. Charter of St. Louis, art. 7, secs. 6, 7, and 12; Rev. Ord. 1887, secs. 1678, 1692,

1697, and 1698; *City v. Spiegel*, 75 Mo. 145. (4) The discrimination attempted by ordinance number 15,599 is in violation of the Constitution of the State and of the charter of the city and is therefore void. Constitution of Mo. 1875, art. 10, sec. 3; Charter of St. Louis, art. 7, sec. 12; *City v. Spiegel*, 75 Mo. 145; *City v. Spiegel*, 90 Mo. 587; *City v. Bowler*, 94 Mo. 630; *City v. Freivogel*, 95 Mo. 533; *Red Star Steamship Co. v. Jersey City*, 45 N. J. L. 246; 1 Dillon, Mun. Corp. [4 Ed.], sec. 322; *Zanone v. Mound City*, 103 Ill. 553.

*W. C. Marshall* for respondent.

(1) Ordinance 1698 contemplates that the fifty million gallons so used by such manufacturer shall pass through one meter. (2) The error of counsel consists in attempting to treat water rates as taxes. A tax is a demand of sovereignty; a toll is a demand of proprietorship. *Railroad v. Penn*, 15 Wall. 232; *City of St. Louis v. Telegraph Co.*, 148 U. S. 97; *Cannon v. City of New Orleans*, 87 U. S. 417; *Packet Co. v. Keokuk*, 95 U. S. 80; *Union Depot Co. v. St. Louis*, 100 U. S. 423; *Packet v. Catlettsburgh*, 105 U. S. 559; *Transportation Co. v. Parkersburg*, 107 U. S. 691. (3) Appellant's contention that "the place where the water is used, and whether used at one place or several, is wholly immaterial," is entirely erroneous. (4) Section 1698 classifies, but does not unlawfully discriminate. *St. Louis v. The St. Louis & New Orleans Transportation Co.*, 84 Mo. 156.

MACFARLANE, J.—This is a suit to recover from defendant the city of St. Louis $10,818, for what plaintiff paid for water between June 5, 1889, and December 20, 1890, in excess, as is alleged, of the amount it could lawfully charge.

Plaintiff is a business corporation engaged in the city of St. Louis in the manufacture of beer. Defendant is a municipal corporation owning and operating water works for supplying citizens, manufacturers and others with water for domestic, manufacturing and other purposes. Plaintiff soon after its incorporation purchased and took possession of seventeen breweries all located in the city of St. Louis, and continues to own and operate them. The several breweries are located in different parts of the city and none of them are located in one or more blocks adjoining each other, except that two of them are located in block 847 which adjoins block 879 in which another is located; and except further, that one of them is located on blocks 1868 and 1869, two adjoining blocks which adjoin block 460 on which another is located.

The ordinance regulating water rates which was in force when plaintiff purchased the breweries, contained this provision:

"The meter rate for the use of water from the waterworks for purely manufacturing purposes and livery stables shall be uniform, and is hereby fixed at one and one fourth cents per one hundred gallons, without regard to quantity used; *provided*, that when the quantity used exceeds fifty million gallons annually the rate is hereby fixed at one cent per one hundred gallons."

April 4, 1890, said provision was amended, so as to read: "The meter rate for the use of water from the waterworks for purely manufacturing purposes is hereby fixed at one and one fourth cents per one hundred gallons; *provided*, that when the quantity used exceeds fifty million gallons annually by any manufacturing plant, located in one or more blocks adjoining each other, the rate shall be one cent per one hundred gallons."

Plaintiff elected to pay for water for manufacturing purposes at meter rates. The quantity of water used by plaintiff in its breweries largely exceeded 50,000,000 gallons annually. From July 5, 1889, to date of amended ordinance, plaintiff consumed 186,426,750 gallons of water, for which it paid one and one fourth cents per gallon. The aggregate quantity of water consumed by plaintiff in all its breweries from the date of the amended ordinance until December 20, 1890, was 246,296,250 gallons, for which it was charged and required to pay one and one fourth cents per one hundred gallons. The aggregate quantity of water consumed by plaintiff in the three breweries located on the same and adjoining blocks was 57,285,000, gallons, for which it was also required to pay one and one fourth cents per one hundred gallons. The quantity of water consumed in the brewery located on two blocks, and the one located on an adjoining block was 82,664,750 gallons, for which plaintiff also paid one and one fourth cents per one hundred gallons.

The amount plaintiff was compelled to pay, or have the water turned off, at the rate of one and one fourth cents per one hundred gallons was over $10,000 more than it would have been at one cent per one hundred gallons, and for this excess plaintiff sues, claiming that under the ordinances he should only have been charged at the lower rate.

Upon these facts judgment was given for defendant and plaintiff appealed.

I. The ordinances in force in the city of St. Louis provide that in case consumers refuse to pay the prescribed charge or rate for water, it should be turned off. Under the agreed statement of facts plaintiff was entirely dependent upon the water of the city for its supply in operating its factories, and it was compelled to pay one and one fourth cents per one hundred

gallons or close them. Under these circumstances plaintiff paid the charges exacted, and this suit is to recover the excess so paid.

It has been held by this court, and may be taken, as settled law in this State, that payment in such circumstances is compulsory and if the charge is excessive the excess may be recovered from the city. *Westlake & Button v. St. Louis*, 77 Mo. 47.

II. It is insisted that under section 1698 of the original ordinance plaintiff was entitled to the rate of one cent per hundred gallons for water consumed in the business of manufacturing, though its factories were located in different parts of the city, and had no connection one with another, except that of proprietorship. This question merely involves the construction of that section of the ordinance. Neither the legality of the ordinance nor the reasonableness of the charges are questioned by plaintiff.

The first question then is, had a manufacturer, who operated a number of disconnected factories, the right, under section 1696, before its amendment, to the rate of one cent per hundred gallons, in case he consumes, in the aggregate, 50,000,000 gallons of water annually, or is the rate to be determined from the quantity used in each factory independently of the others?

The rates for the use of water were prescribed by sections 1697 and 1698. The former fixes a definite charge for a particular use, as a certain amount for each room in a building, or for each business pursuit; the latter apportions the charges according to the quantity of water used, to be ascertained by meter measurements.

The latter section reads:

"All persons requiring the use of water applying for a meter shall have the right to pay for water in

proportion to the quantity used, to be determined by a meter; provided that in all such cases the water-taker shall pay the cost of the meter and of placing the same. The assessor and collector of water rates shall have the power to ascertain by meter measurement the quantity or water used for any purpose and exact payment therefor at meter rates, and in such cases the rates fixed as a license rate shall not apply. In all cases where the water is to be paid for at meter rates, the persons taking out license shall be charged the following rates on the average quantity of water used during the year, the year to be estimated at 300 days. When the quantity used averages 1,000 gallons per day or less, 3 cents per 100 gallons. When the quantity used averages from 1,000 to 2,500 gallons per day, $2\frac{1}{2}$ cents per 100 gallons. When the quantity used averages from 2,500 to 5,000 gallons per day, 2 cents per 100 gallons. When the quantity used averages from 5,000 to 10,000 gallons per day, $1\frac{3}{4}$ cents per 100 gallons. When the quantity used averages from 10,000 to 25,000 gallons per day, $1\frac{1}{2}$ cents per 100 gallons. When the quantity used exceeds an average of 25,000 gallons per day, $1\frac{1}{4}$ cents per 100 gallons. The meter rate for the use of water from the waterworks for purely manufacturing purposes and livery stables shall be uniform, and is hereby fixed at $1\frac{1}{4}$ cents per 100 gallons, without regard to quantity used; provided, that when the quantity used exceeds 50,000,000 gallons annually, the rate is hereby fixed at 1 cent per 100 gallons."

In construing this ordinance we must apply the usual common sense rules which require each word and phrase to be given its plain and ordinary meaning, if doing so will make the entire ordinance express an intelligent purpose, and will render all the parts of it consistent.

It will be observed that the charges for water prescribed by this section are against the person using it, and in proportion to the quantity used by him; it is not according to the quantity used in any particular building or business. The ordinance reads: "All persons requiring the use of water," have the right to pay for it in proportion to the quantity used, and "persons taking out license" shall be charged "on the average amount used during the year." There is nothing in the first part of the ordinance from which an intention can be reasonably drawn that persons were to be charged independently for each separate use.

The provisions contained in the last clause of the section applies to manufacturers and livery stable keepers alone, and the prices were for water used by them "for purely manufacturing purposes and livery stables." We are not able to see that by this clause of the section an intention is manifested to charge manufacturers differently from others using meters. The charges were apportioned according to the aggregate quantity of water they used. It allows to manufacturers a one cent rate "when the quantity used exceeds 50,000,000 gallons annually." The word "used" has no qualification as to the place or factory in which the water is consumed. The ordinance does not make it material whether the water is supplied to manufacturers at one factory or many. The only condition imposed is that the consumer takes the requisite quantity for manufacturing purposes.

It is claimed by defendant that inasmuch as the ordinance provides that the person applying for "a meter" is entitled to be supplied with water at prices regulated by the quantity used, the ordinance should be construed to mean that his rates should be fixed according to the quantity of water measured by each meter independently of others he may use at other

places.   If any significance can be attached to the use by the ordinance of the singular number, the argument, if carried to its legitimate length, would deny to any person the right to use more than one meter whatever his necessities might have been.   In the use of the words "a meter" it was only intended to declare what the instrument of measurement should be.   It was not intended to make a radical qualification to the meaning of the entire ordinance.   It was only intended that a meter should be supplied when applied for in order that the quantity of water consumed might be measured and rates fixed accordingly.

If any doubts could exist as to the proper construction of this ordinance they are put at rest by the evident construction the city itself placed upon it which appears from the fact that an amendment was deemed necessary.   If the construction claimed by defendant is proper, there would have been no need of the amendment.

Under the original ordinance we are of the opinion that plaintiff was entitled to the rate of one cent per hundred gallons for the aggregate quantity of water used in all its factories and that the excess charged can be recovered in this action.

III.   The amended ordinance is the same as the original down to the provision applying to water used for manufacturing purposes, which as amended reads as follows:

"The meter rate for the use of the water from the waterworks for purely manufacturing purposes is hereby fixed at one and one-fourth cents per one hundred gallons; *provided*, that when the quantity used exceeds fifty million gallons annually by any manufacturing plant, located in one or more blocks adjoining each other, the rate shall be one cent per one hundred gallons."

There can be no doubt that the purpose and intent of this amendment was to allow a rate of one cent per one hundred gallons only to those manufacturing establishments which were located in one or more adjoining blocks. The word plant as here used was evidently intended to apply to independent factory buildings. If one factory extends over two blocks it is considered only one plant, or if two independent factories are located on one block it will nevertheless be regarded as two plants. There seems to be no reasonable doubt of the meaning of the amendment.

IV. Plaintiff insists that, "assuming that the words manufacturing plant were intended to be used as the synonym for factory buildings, and that the amended ordinance is intended to say that any water-taker using more than 50,000,000 gallons annually in factory buildings located in one or more adjoining blocks shall be charged one cent per 100 gallons, whereas the water-taker whose factory buildings are located in blocks not adjoining each other shall pay 1¼ cents for 100 gallons, it creates a discrimination forbidden by law, and is therefore void."

As a basis for this charge of discrimination plaintiff relies upon section 3, article 10, of the Constitution of the State and section 12, article 7, of the charter of defendant. The former declares: "Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

The latter provides that no water rate shall be allowed or fixed by any other principle or consideration than that of producing revenue, and exceptional discrimination in rates is forbidden.

While the ownership of waterworks by the city and its right to distribute water to its inhabitants is for a public purpose, the charge it has the right to impose

for the use of water is not derived from the taxing power, but is an exaction the city has the right to make as compensation for the use. The obligation of one who uses water to pay for it rests upon contract. *Provident Savs. Inst. v. Jersey City*, 113 U. S. 506; *Vreeland v. O'Neil*, 36 N. J. Eq. 399; *Wagher v. Rock Island*, 146 Ill. 139.

In the matter of furnishing to its citizens gas or water, a city, when so authorized by its charter, acts in a private rather than a governmental capacity, and has the same right to make reasonable charges therefor that a private corporation has when serving the public. Judge DILLON says: "A city may be expressly authorized in its discretion to erect a public wharf and charge tolls for its use, or to supply its inhabitants with water or gas, charging them therefor and making a profit thereby. In one sense such powers are public in their nature, because conferred for the public advantage. In another sense they may be considered private, because they are such as may be, and often are, conferred upon individuals and private corporations, and result in a special advantage or benefit to the municipality as distinct from the public at large." 1 Dill. Mun. Corp., sec. 27.

The charter of St. Louis confers upon the city power to "establish and maintain waterworks for fully supplying the city with wholesome water, and to distribute the same for public and private uses in such manner and upon such terms as shall be provided by ordinance." Charter of St. Louis, sec. 26, art. 3.

The power here conferred is much the same as might be, and often is, conferred upon private persons or corporations. The charges the city is allowed to make are not in the nature of general taxation, but in that of a toll. "A tax is a demand of sovereignty; a

toll is a demand of proprietorship." *Railroad v. Penn*, 15 Wall. 232.

It is said by BAILEY, J., in *Wagner v. City of Rock Island, supra:* "Taxes are the enforced proportional contribution from persons and property, levied by the State, by virtue of its sovereignty, for the support of government, and for all public needs, and they are therefore justly and properly subjected to the rule of uniformity. But water rates are imposed and collected merely as the compensation or equivalent to be paid by those who choose to receive and use the water, for the commodity thus furnished by the city."

In *Vreeland v. O'Neil, supra*, it was held that the charges by the city for water was neither a general tax nor a special assessment. It was not a general tax because wanting in uniformity, and it was not a special assessment because there was no limitation by which the imposition was restricted to an amount representing the actual benefits of the property in which the water was used.

The rule of uniformity required in taxation does not apply to charges by the city for water.

V. The charter requires that "the water rates shall be fixed at prices that shall produce revenue sufficient at least to pay interest upon the city water bonds, and the running expenses of the waterworks department." It prohibits making rates on any other principle than that of producing revenue and forbids exceptional discrimination. Is this ordinance obnoxious to these charter provisions?

Manufacturers, regardless of the quantity of water used, are given a lower rate than persons engaged in any other business pursuit. Of this favorable classification plaintiff can not complain. But this class is again subdivided and a lower rate is given to those who use 50,000,000 gallons annually in one plant, than

those who use the same aggregate quantity in a number of plants. Of this sub-classification plaintiff complains as an exceptional discrimination against it.

If it should be held that so much of the amended ordinance as makes this classification is void by reason of making exceptional discrimination against certain manufacturers then plaintiff, and all others, would fall under the general classification of manufacturers to which class the lowest meter rates is given. This would be the same rate with which plaintiff was charged. We are unable to see anything whereby plaintiff would be benefited should such amendment be held invalid.

But the municipal assembly is required to establish such prices for water as shall be sufficient to produce a given revenue. The only limitation to its discretion in the matter of establishing rates is found in the prohibition against exceptional discriminations. We are unable to see anything unequal, unreasonable or unjust in allowing a rate of one cent per hundred gallons to those manufactures only who consume a certain specified quantity of water in one plant or factory.

There is no exceptional discrimination in this classification for the rate is given alike to all who fall within the class. There is no claim made that the charge exacted is more than a fair equivalent for the water supplied.

It seems entirely reasonable therefore, and just to consumers, that the charges for water should be graded in proportion to the quantity used at one place or factory. It has never been denied that a city has the right to grade the charges according to the quantity of water consumed. The city was required to raise a revenue sufficient to pay the interest on the water bonds and the expense of operating the waterworks. This sum was to be apportioned among the consumers in some just and reasonable proportion. The duty of

making the apportionment devolved upon the city and was left to its judgment and discretion with which the courts should not interfere, except in case of manifest exceptional discrimination. When all of the same class are treated alike there is no such discrimination. *Parker v. City of Boston*, 1 Allen, 361.

The same principle of apportionment has been sustained in regulating charges for the use of wharfs belonging to a city. *St. Louis v. Transportation Co.*, 84 Mo. 156; *Packet Co. v. Keokuk*, 95 U. S. 80.

We are of the opinion that the amended ordinance is valid, and that no excessive charges thereunder were exacted of plaintiff.

For the error in construing the original ordinance the judgment is reversed and cause remanded. All concur except BARCLAY, J., who does not sit.

### ON REHEARING.

PER CURIAM (MACFARLANE, ROBINSON and BRACE, J J.)—After full reconsideration of this cause, the members of this division of the court participating in its decision agree to adopt and confirm the foregoing opinion of MACFARLANE, J., delivered at the first hearing herein, as the opinion of this division. Accordingly the judgment of the circuit court is reversed and the cause remanded, Judges MACFARLANE, ROBINSON and BRACE concurring; BARCLAY, P. J., not sitting.