Day J.
 

 This case presents three questions: First, whether Section 5625-13a, General Code, relates solely to the transfer of funds derived from taxation and not to funds derived by a municipality from any other
 
 source;
 
 second, whether surplus funds derived from a municipally owned electric light and power plant or system are held by the municipality in trust for the benefit of electric current consumers; and, third, whether Section 5625-13a, General Code, violates any constitutional provisions if it is construed as authorizing a municipality to transfer funds whether tax-derived or not.
 

 Appellants contend that a municipal corporation has no power to transfer surplus funds from its electric light and power department to the Mahoning Valley Sanitary District Fund under Section 5625-13a, General Code, on the ground that the provisions of that statute authorize the transfer of funds derived from taxation only.
 

 In support of this contention we are cited the case of
 
 City of Lakewood
 
 v.
 
 Rees,
 
 132 Ohio St., 399, 8 N. E. (2d), 250, wherein it was annonnced that: “No power to authorize or direct the transfer of waterworks funds is conferred upon the Common Pleas Court or the state Tax Commission by Sections 5625-13a to 5625-
 
 13g,
 
 General Code. Those provisions relate solely to the transfer of funds derived from taxation and have
 
 *174
 
 no reference to funds derived from the maintenance and operation of municipal waterworks.”
 

 Only the question of the transfer of revenues derived from municipally owned and operated waterworks to the general revenue fund of the municipality was involved in that case. The denial of such authority was there based primarily upon the specific provisions of Section 3959, General Code. No such specific exemption has been made by statute respecting the transfer of funds derived from the operation of a municipally owned and operated electric light and power plant. We are therefore called upon to determine the operative effect of the statutory provisions conferring authority for the transfer of municipal funds other than those derived from the operation of waterworks.
 

 Section 3799, General Code, the parent statute of Section 5625-13a, General Code, provided:
 

 “By the votes of three-fourths of all the members elected thereto, and the approval of the mayor, the council may at any time transfer all or a portion of one fund, or a balance remaining therein, except the proceeds of a special levy, bond issue or loan, to the credit of one or more funds,
 
 but there shall be no such transfer except among funds raised by taxation
 
 upon all the real and personal property in the corporation, nor until the object of the fund from which the transfer is to be effected has been accomplished or abandoned.” (Italics ours.)
 

 In 1927, Section 3799, General Code, was repealed (112 Ohio Laws, 391), and Section 5625-13, General Code (112 Ohio Laws, 397), was enacted to replace it, and read as follows:
 

 “No transfers shall be made from one fund of a subdivision to any other fund, by order of court or otherwise, except that transfers may be made from the general to special funds established for purposes within
 
 *175
 
 the general purposes, of the general fund, and from such special funds to the general fund; hut no transfers shall be made from any such special fund to the general fund, except of moneys theretofore transferred from the general fund. Such transfers shall only be made by authority of an appropriation in the annual or supplemental appropriation measure, or by resolution of the taxing authority adopted by a three-fourths vote. Before any transfer shall be made, the fiscal officer of the subdivision shall certify in writing that the amount so to be transferred is not encumbered by any obligation or appropriation, and is in the treasury or in process of collection. At the end of a fiscal year any balance in a special fund to which a transfer has been made shall revert to the general fund but not in excess of. the amount that was originally transferred during such fiscal year. In determining the balance in the general fund at the close of such fiscal year, balances which have so reverted shall be included.”
 

 In 1929, Section 5625-13, General Code, was amended (113 Ohio Laws, 670, 673) to read as follows:
 

 “No transfers shall be made from one fund of a subdivision to any other fund, by order of the court or otherwise, except as hereinafter provided:
 

 “a. The unexpended balance in a bond fund that is no longer needed for the purpose for which such fund was created shall be transferred to the sinking fund or bond retirement fund from which such bonds are payable.
 

 “b. The unexpended balance in any specific permanent improvement fund other than a bond fund, after the payment of all obligations incurred in the acquisition of such improvement, shall be transferred to the sinking fund or bond retirement fund of the subdivision; provided that if such money is not required to meet the obligations payable from such funds, it may be transferred to a special fund for the acquisition of
 
 *176
 
 a permanent improvement or improvements or, ’with, the approval of the Court of Common Pleas of the county wherein such subdivision is located, to the general fund of the subdivision.
 

 “c. The unexpended balance in the sinking fund or bond retirement fund of a subdivision, after all indebtedness, interest and other obligations for the payment of which such fund exists have been paid and retired, shall be transferred in the case of the sinking fund to the bond retirement fund and in the case of the bond retirement fund to the sinking fund; provided that if such transfer is impossible by reason of the non-existence of the fund herein designated to receive the transfer, such unexpended balance, with the approval of the Court of Common Pleas of the county wherein such subdivision is located, may be transferred to any other fund of the subdivision.
 

 “d. Unless otherwise provided by law, the unexpended balance in any special fund, other than an improvement fund, existing in accordance with Section 5625-9, paragraph (d), (f), or (g) or Section 5625-11 of the General Code, may be transferred to the general fund or to the sinking fund or bond retirement fund after the termination of the activity, service or other undertaking for which such special fund existed, but only after the payment of all obligations incurred and payable from such special fund.
 

 “e. Moneys may be transferred from the general fund to the sinking fund or the bond retirement fund to meet a deficiency in either of the latter funds.
 

 “f. Moneys appropriated therefor may be transferred from the general fund of a subdivision to a fund authorized by Sections 5625-11 or 5625-12 of the General Code or to the proper fund of a district authority.
 

 “Except in the case of transfers in accordance with paragraphs (e) and (f) of this section, transfers herein authorized shall only be made by resolution of the tax
 
 *177
 
 ing authority passed with the affirmative vote of two-thirds of the members thereof.”
 

 In 1933, Section 5625-13, General Code, was supplemented by the enactment of Section 5625-13a, General Code (115 Ohio Laws, 251), which read as follows:
 

 “In addition to the transfers authorized in Section 5625-13, the taxing authority of any political subdivision may transfer any public funds under its supervision, except the proceeds or balances of loans, bond issues, or special levies for the payment thereof, from one fund to another in the manner hereinafter provided.”
 

 In 1935, the above quoted section was amended (116 Ohio Laws, 46) and as now in full force and effect, reads as follows:
 

 “In addition to the transfers authorized in Section 5625-13, the taxing authority of any political subdivision may, in the manner hereinafter provided, transfer from one fund to another any public funds under its supervision except the proceeds or balances of loans, bond issues, or special levies for the payment thereof, and except the proceeds or balances of funds derived from any excise tax levied by law for a specified purpose or purposes, and except the proceeds or balances of any license fees imposed by law for a specified purpose or purposes.”
 

 It will be noted that the language used in Section 3799, General Code, that “there shall be no such transfer except among funds raised by taxation * * *” was dropped from all the succeeding enactments governing the transfer of funds, and, as if to clarify and make more manifest the legislative intent on the subject, the General Assembly, in the 1933, and again in the 1935, enactments, incorporated this language: “The taxing authority of any political subdivision may transfer
 
 any
 
 public funds
 
 under its supervision.”
 
 (Italics ours.) The prohibition contained in Section 3799, General
 
 *178
 
 Code, against the transfer of funds not raised by taxation was definitely removed, and the power to transfer “any public funds under its supervision,” meaning thereby, whether derived from taxation or otherwise, to any other fund, was expressly granted. The only funds excepted from the operation of this authorization are those specifically named in Sections 5625-13 and 5625-13a, General Code, which are subject to those provisions specifically applicable to them — and except the waterworks funds, by virtue of the provisions of Section 3959, General Code. It follows that proposition 2 of the syllabus in the case of
 
 City of Lakewood
 
 v.
 
 Rees, supra,
 
 is modified in so far as it limits the transfer of funds to those derived solely from taxa: tion. Consequently, on compliance with the conditions precedent required by statute, the city of Niles has full power, under Section 5625-13a, General Code, to transfer surplus funds from its electric light and power department to the Mahoning Valley Sanitary District Fund.
 

 However, appellants contend that if Section 5625-13u, General Code, be thus construed, it nevertheless contravenes Article I, Section 19, Article XII, Section 2, Article XII, Section 5, and Article XIII, Section 6, of the Ohio Constitution, as well as the contract (Article I, Section 10) and due process (Article XIV, Section I, Amendments) clauses of the United States Constitution.
 

 Proceeding on the assumption that surplus funds collected by a municipal light and power department from its customers is the property of the customers, held by the municipality in trust for their benefit, appellants argue that the transfer of this fund to another fund for the payment of general municipal obligations constitutes an appropriation of private property, in violation of Article I, Section 19, of the Ohio Con
 
 *179
 
 stitution and of the due process clause of the United States Constitution.
 

 Such argument would be proper where a municipality holds merely the bare legal title to an electric light and power system, in trust for the benefit of its patrons, in whom the beneficial interest vests. In such case, the municipality would be a trustee and the patrons the
 
 cestuis que trust.
 
 The proceeds derived would have to be applied to the purposes of the trust, and any profits or surplus funds remaining after payment of expenses, cost of operation and maintenance, would have to be held in trust for the benefit of -the patrons as
 
 cestuis que trust.
 
 A transfer or diversion by the municipality of such surplus funds to uses and purposes foreign to the trust would then properly give rise to the question whether such transfer or diversion does not violate the property rights of the
 
 cestuis que trust
 
 and constitute a deprivation of property without due process of law.
 

 “When a city or town holds the naked legal title to certain property, in trust for the benefit of its inhabitants for a certain designated purpose exclusively, and has no beneficial interest in the property or power to convey it, and is bound to devote the proceeds from the use of the property for the purposes of the trust, the Legislature may enact a statute providing for the turning over of the property to a different trustee, without the consent of the city and without compensation to it, regardless of the character of the property or the capacity in which it is held by the municipality, so far as the rights of the municipality are concerned. When, however, a trust was created by will or deed by which it was provided that the trust fund should be administered by a municipal corporation or by certain officers thereof, and the trust was accepted by the corporation, a statute turning over the management of the trust fund to a private corporation is unconstitutional
 
 *180
 
 as impairing the obligation of the contract between the donor and the municipality.” 19 Ruling Case Law, 766, Section 72.
 

 However, such is not the situation here. The record does not disclose that the city of Niles holds only bare legal title, operating its electric light and power system merely as trustee for the sole benefit of its patrons as beneficiaries of the trust. In the absence of an affirmative showing to the contrary, a trust will not be declared, and the municipality will be deemed to hold not alone the legal title but the equitable interest as well, and as fully entitled, in its own right, to the proceeds derived from the operation of the electric light and power system.
 

 Whoever purchases electric energy from a municipally owned electric light and power plant or system, occupies the same position with respect to the price paid as if the purchase were made from a private corporation engaged in the same business. The result to the ratepayer is the same. The consumer parts with all interest in and control over the purchase price after it is paid, and it becomes the exclusive property of the municipality, with the right to use, transfer or divert it to any purpose and in any manner authorized by law; and when so transferred or diverted, Article I, Section 19, of the Ohio Constitution, and the due process clause of the United States Constitution are not thereby violated.
 

 This holding likewise disposes of the contention that the transfer of funds derived from the sale of electric energy prior to the effective date of Section 5625-13a, General Code (June 7, 1933), deprives the consumers of their property without due process of law. Since the proceeds derived from the sale of electric energy do not constitute a fund in trust for the benefit of the consumers, the consumers acquired no property right
 
 *181
 
 therein, either prior or subsequent to the effective date of Section 5625-13a, General Code.
 

 Appellants further contend that if a municipal utility is permitted to charge a rate in excess of the cost of furnishing the service or product, and if such excess were used to finance the cost of municipal government, that such excess, so used, would assume the nature and be used in lieu of taxes and the municipality would thereby be enabled to evade the constitutional limitations upon its power of taxation, and that municipalities would be free to impose the cost of municipal government upon the consumers of light and power.
 

 This contention proceeds on the theory that a municipality has no right to charge for its utility service or product a rate in excess of cost,
 
 i. e.,
 
 that it has no right to make a profit. Nevertheless, we are not referred to any statute or constitutional provision denying this right. In the absence of such prohibition, a municipality, no less than a private corporation engaged in the operation of a public utility, is entitled to a fair profit. In the operation of a public utility, a municipality acts, not in a governmental capacity as an arm or agency of the sovereignty of the state, but in a proprietary or business capacity. 9 Ruling Case Law, 1232, Section 38. In its proprietary capacity it occupies the same “posture” as that occupied by a jjrivate corporation engaged in business
 
 (Travelers Ins. Co.
 
 v.
 
 Village of Wadsworth,
 
 109 Ohio St., 440, 142 N. E., 900, 33 A. L. R., 71
 
 1; Butler
 
 v.
 
 Karb,
 
 96 Ohio St., 472, 117 N. E., 953; 43 Corpus Juris, 420, Section 551;
 
 Brumm
 
 v.
 
 Pottsville Water Co.,
 
 9 Sad. [Pa.], 483, 12 A., 855, quoted with approval in
 
 Travelers Ins. Co.
 
 v.
 
 Wadsworth, supra),
 
 and as such, is entitled to a reasonable profit
 
 (Wagner
 
 v.
 
 City of Rock Island,
 
 146 Ill., 139, 34 N. E., 545, 21 L. R. A., 519; 27 Ruling Case Law, 1438;
 
 Twitchell
 
 v.
 
 City of Spokane,
 
 55 Wash., 86, 104 P., 150, 24 L. R. A. [N. S.], 290, 133 Am. St. Rep.,
 
 *182
 
 1021;
 
 Preston
 
 v.
 
 Water Commissioners,
 
 117 Mich., 589, 76 N. W., 92;
 
 St. Louis Brewing Assn.
 
 v.
 
 St. Louis,
 
 140 Mo., 419, 37 S. W., 525 [rehearing denied in 140 Mo., 432, 41 S. W., 911];
 
 Warwick Co.
 
 v.
 
 Newport News,
 
 153 Va., 789, 151 S. E., 417;
 
 Shirk
 
 v.
 
 Lancaster,
 
 313 Pa., 158, 169 A., 557, 90 A. L. R., 688).
 

 In
 
 Preston
 
 v.
 
 Water Commissioners, supra,
 
 the court said: “It is not an unusual thing for cities and villages to confer a franchise upon a private corporation to do what is being done by the board of water commissioners. * * * Had this been done, would it be unreasonable for the private corporation to expect ultimately to get back from its patrons the cost of its investment, including its extensions, with a reasonable profit? If the Legislature may confer upon the municipality the right to grant such a franchise, why may not that right be exercised by means of a board of water commissioners in the interests of the muicipality, so the municipality shall ultimately own the property? In the exercise of the franchise by a private corporation, the rates fixed must doubtless be reasonable and equitable. What more can be required of the rates fixed by the water board?”
 

 So long as the rate is reasonable, the courts cannot prohibit a municipality from making a profit on the operation of its electric light and power system, in the absence of any restriction in the statute which enables it to operate such system.
 
 Shirk
 
 v.
 
 Lancaser, supra.
 

 The rate charged in excess of cost is not a tax or in the nature of a tax, regardless of how the fund derived therefrom is ultimately used. A municipality, acting in a proprietary capacity, cannot impose taxes. While thus engaged, it is engaged in business but not in the business of government. A municipality may impose and collect taxes only when acting as an arm or agency of the state, but when engaged in business, it does not so act. A tax is a tribute levied for the support of
 
 *183
 
 government. 38 OMo Jurisprudence, 714, Section 3. A rate charged for a public utility service or product is not a tax, but a price at which and for which the public utility service or product, is sold (27 Ruling Case Law, 1436, Section 52; 67 Corpus Juris, 1236, Section 784;
 
 Travaillie
 
 v.
 
 City of Sioux Falls,
 
 59 S. D., 396, 240 N. W., 336), and the excess charged over and above cost, as a profit, enters into and becomes a part of the price. Payment of a tax is an obligation imposed. Payment of a price for a utility product or service furnished by a municipality is voluntarily assumed. Payment of the one is involuntary (38 Ohio Jurisprudence, 716, Section 6); payment of the other entirely voluntary. The obligation in the one case arises by operation of law, while in the other it arises out of contract, express or implied. Where, however, the rates charged are excessive, a municipality is amenable to the same laws governing rates as a private corporation would be when engaged in a public utility business. But we need not here dwell on this point, since no complaint is made that the rate or charge is excessive.
 

 Since the rate charged is not a tax in its inception, ultimate use of surplus funds derived therefrom for the support of municipal government will not convert it into taxes or cause it to assume the nature of taxes.
 

 While it is true that all property, except such as is exempt by law, must be taxed for the purpose of raising revenue for the support of government, nevertheless, the Legislature is not prohibited from making provision for the procurement of general revenue from sources other than taxation. See
 
 Alter
 
 v.
 
 City of Cincinnati,
 
 56 Ohio St., 47, 46 N. E., 69, 35 L. R. A., 737.
 

 By permitting this transfer, a municipality is not thereby released from the firm grip of the constitutional limitations imposed upon its taxing power, nor are the consumers thereby subjected to a tax for the support of municipal government.
 

 
 *184
 
 We hold, therefore, that Section 5625-13», General Code, permitting political subdivisions to transfer “any public funds under its supervision” to another municipal fund, does not release municipal corporations from the limitations upon their taxing power, imposed by the Constitution, and is not therefore constitutionally repugnant.
 

 Contention is further made by appellants that the order of the Court of Common Pleas authorizing the transfer is void for the reason that it was made under authority of Section 5625-13», General Code, which governs the transfer of funds derived from taxation only. However, having held that transfers' under Section 5625-13», General Code, are not thus limited, this contention and all others here made, based on the same premise, fall by the wayside.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Zimmerman, Williams, Myers and Gorman, JJ., concur.