THE STATE, EX REL. WATERBURY DEVELOPMENT CO., *v.* WITTEN.

(No. L-76-253—Decided September 16, 1977.)

Messrs. Spengler, Nathanson, Heyman, McCarthy & Durfee, Mr. Ralph Bragg and Mr. Gary D. Sikkema, for relator.

Messrs. Doyle, Lewis & Warner, Mr. Thomas D. Smith and Mr. Alan B. Dills, for respondent.

POTTER, P. J. This cause came on to be heard upon the pleadings, evidence, briefs, and arguments of counsel.

This is an original mandamus action in the Court of Appeals filed by the Waterbury Development Co. against Sally Witten, the Village Administrator for the Village[1] of Waterville. The plaintiff-relator's application for a zoning permit[2] was denied since the plaintiff-relator refused to pay the following fees to the Village of Waterville: a water tap charge pursuant to Waterville Ordinance No. 21-76; a sanitary sewer tap charge pursuant to Waterville Ordinance No. 22-76[3]; and a park fee pursuant to Section 1313.19 of the Waterville Code.

The ordinance 21-76 and code provision 1313.19 are set forth below:

"Ordinance No. 21-76

"An ordinance fixing water tap charges for connection to the public water distribution system of the village, and declaring an emergency.

"Be it ordinaed by the Council of the Village of Waterville, Lucas County, Ohio (five members elected thereto concurring) that:

"Section 1. There be and hereby is adopted in accordance with Chapter 931.06(a) a water tap-in charge according to the following schedule:

---

[1] Villages are municipal corporations which at the time of the last federal census had a population of less than 5,000. R. C. 703.01.

[2] The zoning permit is a prerequisite of a building permit.

[3] Ordinance No. 22-76 regarding the sewer tap charge was repealed on October 11, 1976; that issue is now moot.

| "Water Meter Size | Equivalent 5/8" Size | Equity Value | Tapping & Installation | Total |
|---|---|---|---|---|
| 5/8 | 1.0 | 500 | 220 | 720 |
| 3/4 | 1.5 | 750 | 265 | 1,015 |
| 1 | 2.5 | 1,250 | x | |
| 1-1/4 | 3 | 1,500 | x | |
| 1-1/2 | 5 | 2,500 | x | |
| 2 | 8 | 4,000 | x | |
| 3 | 15 | 7,500 | x | |
| 4 | 25 | 12,500 | x | |
| 6 | 50 | 25,000 | x | |
| 8 | 80 | 40,000 | x | |
| 10 | 120 | 60,000 | x | |
| 12 | 215 | 107,500 | x | |

x to be charged at the actual cost thereof.

"Section 2. The rates hereby established shall be effective and shall be paid in full with each application made after the date of passage of this ordinance.

"Section 3. This ordinance is deemed to be an emergency measure and shall take effect and be in force immediately upon its passage. The reason for the emergency lies in the fact that this ordinance is necessary for the preservation of the public peace, health and safety in that providing for water tap charges which reflect the cost justified for participation in the water distribution system at the earliest date will promote more efficient operation of the water distribution system and be in the best interest of the municipality.

"Vote on emergency clause: Yeas 6 Nays 0

"Passed as an emergency measure: Yeas 6 Nays 0 Date: 8-23-76

"Attest:

s/Ann M. Green                    s/Rodger Harringshaw

Clerk of Council                    Mayor

"Approved as to Form:

s/Thomas D. Smith

Village Solicitor

"Posted this —— day of ——————, 1976."

"1313.19 Fees for new Park Development Fund.

"(a) As a condition precedent to the issuance of any building permit, there are hereby established the following fees to be paid by each applicant for a building permit at the time an application is made:

"(1) Additions and alterations for existing single-family dwelling—$10.00.

"(2) New construction of a single-family dwelling—$30.00.

"(3) New construction of a multiple-dwelling having one bedroom—$20.00; anything over one bedroom—$30.00.

"(4) New construction of a two-family dwelling—$50.-00.

"(5) New construction of a commercial building—a minimum fee of $25.00 and an additional fee of $10.00 for each 1,000 square feet of floor area or part thereof. For any additions or alterations a fee of $10.00 for each 1,000 square feet of floor area or part thereof will be charged.

"(6) New construction of an industrial building or structure—minimum fee of $40.00 and an additional fee of $15.00 for each 1,000 square feet of floor area or part thereof. For any additions or alterations a fee of $15.00 for each 1,000 square feet of floor area or part thereof will be charged.

"(b) The fees established above are in addition to and separate from any fees required by this chapter to be paid in order to obtain a building permit for construction within the Village.

"(c) The Municipal Administrator is hereby directed to collect the fees established in subsection (a) herein prior to the issuance of any permit. All fees so received by the Village shall be paid into a subfund of the Capital Improvement Fund to be known as the New Park Development Fund. All moneys in such fund shall be used solely and exclusively for the purchase and development of new parks. (Ord. 11-70. Passed 4-13-70.)"

The plaintiff-relator maintains that the above stated ordinances and code provisions are invalid and unconstitutional, in that the fees charged exceed the actual cost to the Village or do not confer sufficient benefit to the required payor.

The ordinance imposing increases on water taps raised the fee from $175 to $720. Approximately $220 is used to cover the actual cost of connection and meter installation. The additional $500 is referred to by the village as "equity value." This "equity value" was supposedly calculated on the theory that new connections should pay for the value of the existing water system previously paid for by existing connections.[4]

The park fee of $30 is assessed only against a person building a single-family dwelling having more than one bedroom. Persons owning homes prior to the passage of the ordinance are not taxed even though they are entitled to use the parks.

The issue raised by the plaintiff-relator is:

"Are the ordinances imposing the water tap equity value charge and the fee for the New Park Development Fund as pre-requisites for obtaining a building permit valid legislative enactments pursuant to state statutes and to the federal and state constitutions."

The plaintiff-relator contends in its brief that:

"In order for the Village of Waterville to validly impose a water tap fee as a prerequisite for obtaining a building permit, the legislation must constitute either a valid exercise of the police power or a valid exercise of the revenue-raising power of municipality."

We agree with this observation.

Water systems are statutorily defined as public utilities. R. C. 4905.03; see *Bd. of Education* v. *Columbus* (1928), 118 Ohio St. 295. Public utilities may be financed by revenue bonds[5] (*State, ex rel. Toledo,* v. *Weiler* [1920], 101 Ohio St. 123; Ohio Constitution, Section 12, Article XVIII); rates and charges (Ohio Constitution, Sections 4, 7, Article XVIII); taxes (Ohio Constitution, Section 13, Article XVIII; R. C. 743.22); and special assessments (Ohio Constitution, Section 11, Article XVIII; R. C. 729.06; R. C. 729.11).

The defendant-respondent refers to the amount assess-

---

[4] This recommendation was the result of a study done by Jones and Henry Engineers, Limited.

[5] Neither party contends that revenue bonds are at issue.

ed against the plaintiff-relator as a "user charge." Charges and rates are fixed prices for a product or service. *Himebaugh* v. *Canton* (1945), 145 Ohio St. 237, 240. A "user charge" which is unreasonable and discriminates between consumers within a municipality is invalid. 1 Crowley's, Ohio Municipal Law, Section T 43.24; *Strahan* v. *Aurora* (1973), 38 Ohio Misc. 37; R. C. 743.04.

It is undisputed that a tap-in charge must be fair and reasonable and bear a substantial relationship to the cost involved in providing the service to the landowner. See *Englewood Hills* v. *Englewood* (1967), 14 Ohio App. 2d 195, cited by both parties. However,

"An ordinance which imposes a 'tap-in charge' which substantially exceeds the cost to the city of supervising the connection of an adjoining property to a sanitary sewer and which is to be used in making other sewer improvements, is unconstitutional and void as applied to vacant lots sold to a builder by developer who had paid for sewer improvements." *Zehman Construction Co.* v. *Eastlake* (1962), 28 Ohio Ops. 2d 350, headnote 1.

In the *Zehman Construction* case the case of *State, ex rel., Stoeckle,* v. *Jones* (1954), 161 Ohio St. 391, and *Herman* v. *The State, Ex Rel.* (1896), 54 Ohio St. 506, were considered and distinguished.

*Strahan* v. *Aurora, supra,* is of similar import as *Zehman, supra.* The tap-in charge cannot be sustained as a proper exercise of the police power as it bears no reasonable relationship to the cost involved in providing the service related to tapping in.

Water charges that exceed the cost of the service constitute taxes. See *Cincinnati* v. *Roettinger* (1922), 105 Ohio St. 145; *Shoemaker* v. *Granville* (1958), 79 Ohio Law Abs. 573.

The collection of taxes by a municipality for water systems must conform with the proper statutory provisions,[6] the Ohio Constitution, Section 2, Article XII, and the Due Process Clause of the United States Constitution.

---

[6]See R. C. 743.22; R. C. 5705.01-5705.50.

The noncompliance with the above laws renders the tax illegal.

Labeling the "user charge" as a special assessment would, also, provoke legal dilemmas. R. C. 727.12(D) provides that the municipal corporation must:

"(D) State whether the method of levying the special assessments shall be:

"(1) By a percentage of the tax value of the property assessed;

"(2) In proportion to the benefits which may result from the improvement;

"(3) By the foot front of the property bounding and abutting upon the improvement; * * *."

As to a percentage of the tax value of the property assessed or the making of a special assessment by foot front of the property, R. C. 727.02 was not followed. An assessment cannot exceed the benefit conferred on the property owner. *Lasky* v. *Hilty* (1951), 91 Ohio App. 136. *Hunt* v. *Norwood* (1917), 20 N. P. (N. S.) 437. The assessment levied by Waterville did exceed the benefit to the individual property owner.

The charge is the equivalent to a membership fee in the Waterville Water Department. It bears no relationship to the present or future cost of providing water to the residents of Waterville.

Furthermore, the parties agree that the $500 "equity value" of the "user charge" was sanctioned on the assumption that future expansion of the water system would be necessary. The financing of a future project must be done pursuant to the specifications of R. C. 727.12. This was not done.

Many of the observations above are applicable to the park fee. The $30 park fee is categorized as a license fee[7] by the defendant-respondent. A license fee is proper upon an occupation or business in contrast to raising funds for park purposes. See *State* v. *Hipp* (1882), 38 Ohio St. 199, cited with approval in *Home Savings & Loan Assn.* v.

---

[7] It is not so defined in the code provision 1313.19.

*Boesch* (1975), 41 Ohio St. 2d 115, 118; 51 Ohio Jurisprudence 2d 75, Taxation, Section 51.

The defendant-respondent states in her brief:

"* * * This increased cost to the Village to provide regulation and police supervision regarding the resident's use of the park system is directly related and reflected in the $30.00 license fee charged thereunder."

This would be an improper use since the ordinance itself states:

"* * * All moneys in such fund shall be used solely and exclusively for the purchase and development of new parks."

The recent case of *Towne Properties* v. *Fairfield* (1977), 50 Ohio St. 2d 356, stated in the syllabus the following:

"R. C. Chapter 5705, creating the general tax levy, contains neither an expressed statutory interdiction nor a justification for the implication of a legislative intention of pre-emption; therefore, a municipality has retained its authority to impose a tax upon new residential units and mobile homes or trailer pads in the city to provide the funds for the acquisition, development, maintenance and operation of needed public recreation sites or facilities."

That case involved a "tax" and it was uniform. The village code provision in question is a "fee" and varies as to the size of the building. We find that *Towne Properties* is not applicable. See 51 Ohio Jurisprudence 2d 21, 29, Taxation, Sections 6 and 15.

Relator's prayer for a writ of mandamus is granted. Respondent is ordered to issue the necessary building permits to relator without requiring the payment of the equity value fee as required by Ordinance 21-76 and without requiring payment of the fees for the New Park Development Funds.

*Writ granted.*

BROWN and HAM, JJ., concur.

HAM, J., of the Court of Common Pleas of Fulton County, sitting by designation in the Sixth Appellate District.