Matthias, J.
 

 The question presented in this case, as stated by counsel for the relator, appellee in this court, is whether the city manager of Cincinnati and the superintendent of its waterworks have duties as public officers to authorize the relator to connect its
 
 *467
 
 water main extensions to the county water main in Miami road and to receive city water from such main, regardless of the fact that ordinance No. 164-1946 of the city of Cincinnati, adopted on May 22, 1946, authorizes the city manager to continue for a period of five years from May 29, 1946, in accordance - with the terms of existing contracts, except as modified by such ordinance, to supply areas outside the city with such surplus water as the city might have, provided that water should not be delivered to any extension of existing mains outside the city.
 

 It is disclosed that on April 24,1926, the county commissioners entered into a contract with the city of Cincinnati, providing for the sale and the delivery of water to certain sewer districts theretofore established in that county. In 1930, a contract was entered into between the same parties whereby the city agreed to supply water to the extent of its surplus to sewer and water districts 1 to 9 to which shortly thereafter districts 10 and 11 were added. It was stipulated that such contract should be in effect for the period ending May 29, 1946. That contract obligated the city to render service to any part of the 11 sewer districts established by the. county, which districts it is stated covered more than half of the county.
 

 That contract contained the following provisions:
 

 “Section 3. The provisions of this contract shall apply to municipalities at present obtaining water through the county distribution system. Municipalities hereafter desiring water service shall contract directly with the city for such service. * * *
 

 * * * * #
 

 “Section 23. Unless otherwise specifically provided for herein, the city superintendent of waterworks is authorized to enforce in the county any and all rules and regulations now or hereafter lawfully in effect in
 
 *468
 
 the city to the extent that the same shall he applicable. Before putting into effect new rules or regulations which may affect county consumers, the city manager shall notify the board of county commissioners of the proposed changes and, at their request, shall provide for a hearing as to such changes. In case of controversy, the decision of the city manager shall be final.
 

 & * * * #
 

 “Section 25. It is further agreed and understood that in the event the city’s water supply should become insufficient to meet the needs of the city or its citizéns, and to meet the demands of contracts in force prior to April 24, 1926, then, and in that event, this contract and agreement m'ay be abrogated by the city, without recourse, upon thirty days written notice given by the city manager to the board of county commissioners.
 

 “Section 26. This contract may also be abrogated by either party for any reasonable cause, without recourse, upon six months written notice being given by the other party.
 

 “Section 27. Subject to the provisions of Sections 25 and 26 herein, this contract shall be in force and effect for the period ending May 29, 1946.. All contracts supplementary hereto or in extension hereof, shall terminate not later than the date of termination of this contract.”
 

 On May 22, 1946, the council of the city of Cincinnati adopted ordinance No. 164-1946. That ordinance authorized the city manager to continue for a period of five years from May 29, 1946, in accordance with the terms of existing contracts, except as modified therein to supply “such surplus water as the city may have; provided that water shall not be furnished to any extension of existing mains outside the city
 

 
 *469
 
 The ordinance contains the further provision that whenever an owner of land, which is outside the city and is so located that it should become a part of the city, makes a binding commitment on behalf of himself and subsequent owners to sign any petition or other document necessary to procure annexation of his land, and do all things necessary or proper to bring about the annexation of his land, then the city manager shall report such facts and his recommendation to council for its consideration as to whether water shall be furnished to such owner. The ordinance contains a further provision that ‘ ‘ the city manager shall from time to time bring to the attention of council any situation where the denial of water service to an extension of an existing main outside the city, particularly an extension heretofore approved in an unincorporated area of the county, is apt to, or will, result in great hardship, or where such denial, in his opinion, may result in serious economic or social disadvantage to the community, for such action as council may wish to take in the premises.”
 

 No new contract was entered into between the county and the city subsequent to the adoption of such ordinance, and the city has continued to furnish water to the county districts in accordance with the old contract.
 

 The claim of the relator for continued service in Sanitary Sewer District No. 1 arises from the terms of the former contract which concededly had expired and was no longer binding on the city of Cincinnati. It is claimed that the obligation to supply water is continued in force by reason of the authority conferred upon the city manager by the ordinance above referred to.
 

 The position of the relator is that the city manager of Cincinnati and the superintendent of its waterworks have duties as public officers to authorize the relator
 
 *470
 
 to connect its water main extensions to the county water main in Miami road and to receive water from the distribution system of the city of Cincinnati, regardless of the fact that, although under the terms of the existing ordinance the sale of surplus water outside the city limits is authorized, a specific limitation is prescribed that water shall not be furnished to any extensions of existing mains, outside the city.
 

 Relator argues that the county commissioners of Hamilton county by establishing Sanitary Sewer District No. 1 assumed the legal duty to supply this district with water without discrimination; that the city of Cincinnati, by voluntarily undertaking to supply its surplus water to consumers in this district by means of the county water system, became subject to the same duty; and that the city, without the consent of the county, could not absolve itself from that duty by contract.
 

 Relator also claims that the provision of Ordinance No. 164-1946, forbidding the city manager to furnish water to extension mains outside the city, is in fact discriminatory against the relator and is void; that the city, by including this prohibition in the ordinance and thereafter authorizing water to be furnished to water main extensions of persons signing annexation agreements, is engaged in a concerted plan through its power over the water supply to compel inhabitants outside the city to permit annexation of their property to the city and to take away from them their right preserved by the statutes of Ohio to oppose such annexation; and that this entire scheme is contrary to public policy and void.
 

 The relator’s contention that the city, having assumed voluntarily to supply water to Sanitary Sewer District No. 1, was bound to do so without discrimination is based upon the decision of this court in the case of
 
 Western Reserve Steel Co. v. Village of Cuya
 
 
 *471
 

 hoga Heights,
 
 118 Ohio St., 544, 161 N. E., 920. The syllabus of that case reads:
 

 “1. It is the duty of a municipality which undertakes to supply water to its public to do so without discrimination. The duty arises out of such undertaking, regardless of the mode adopted to accomplish such purpose. The municipality cannot absolve itself of such duty by a contract to which the person sought to be discriminated against and to whom it owes the duty is not a party.
 

 “2. The provisions of Sections 4 and 6 of Article XVIII of the Constitution of Ohio, authorizing municipalties to contract with each other for water service, do not release such municipalities from any duty which they owe to their respective publics or the public of each other.
 

 “3. When a municipality contracts to supply water to the public of another municipality, it dedicates itself in that respect to the service of the public of such other municipality; and while it may limit, by contract, the scope and extent of its duty to the municipality as such, it cannot, while enjoying the privileges and immunities of a public utility, by such contract absolve itself from the duties toward such public that are cast upon it by law by reason of such dedication. ’ ’
 

 The facts in that case differ in essential particulars from the facts herein. The question presented in the
 
 Western Reserve Steel Co. case, supra,
 
 was the interpretation of a contract then in effect between the village of Cuyahoga Heights and the city of Cleveland, under which contract the village of Cuyahoga Heights had guaranteed the payment of delinquent accounts for water sold in the village by the city of Cleveland. The village had paid a sizeable bill incurred by a preceding owner of the premises later acquired by The Western Reserve Steel Company. The city of Cleveland under the terms of its contract with the village
 
 *472
 
 was refusing to sell water to the Western Reserve Steel Company until that company had paid the water rents due by reason of the default of the previous owner.
 

 This court held that under such a contract the city of Cleveland could not discriminate among users of water in the village to which.it was furnishing water and that in undertaking to furnish water the city hád dedicated itself in that respect to the service of the public of such other municipality.
 

 To make that decision applicable to the facts in the instant case, a contract with the county commissioners of Hamilton county or the residents of Sanitary Sewer District No. 1 must be inferred from the ordinance of the city of Cincinnati authorizing a continuance of delivery of water for the period of five years in accordance with the terms of the expired contract. A further assumption must be made that, if the city of Cincinnati furnishes any water to any consumer subsequent to the expiration of its contract, any action in so doing must be pursuant to and in accordance with such previously existing contract.
 

 But this contention of the relator and his reliance upon the
 
 Western Reserve Steel Co. case
 
 must be tested also by the language of the third paragraph of the syllabus wherein this court said that “while it may limit, by contract, the scope and extent of its duty to the municipality as such, it cannot, while enjoying the privileges and immunities of a public utility, by such contract absolve itself from the duties toward such public that are cast upon it by law by reason of such dedication. ’ ’ The claim of the relator must necessarily be that the city is without power to limit the scope and extent of the service it is to furnish, and that this is so, even though there is no express contract between the city and the county.
 

 
 *473
 
 The authority of municipalities relating to the matters involved herein is conferred by the provisions of Sections 4 and 6 of Article XVIII of the state Constitution. The provisions of Section 4 authorize any municipality to “acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the rñunicipality or its inhabitants, and may contract with others for any such product or service.” The provisions of Section 6 authorize “any municipality, owning or operating a public utility for the purpose of supplying the service or product thereof to the municipality or its inhabitants, may also sell and deliver to others * * * the surplus product of any * * * utility in an amount not exceeding * * * fifty per centum of the total * * * product supplied by such utility within the municipality.”
 

 It is admitted that ordinance No. 164-1946 increased the water rates and no argument is presented that this is illegal, but this court is asked now to say that the city cannot limit the extent of the water mains which it will supply and that its duty in that respect is governed solely by the actions of those who own land within the sewer district. Relator argues that, although, if the water supply of the city of Cincinnati should become inadequate, the city might refuse service to these sanitary sewer districts, perhaps completely, the city is without power to continue to supply only those it now serves and to exclude those who can be served only through the connection of new large extensions to existing mains.
 

 Ordinance No. 164-1946 sets forth in detail the reasons, upon which the council of the city of Cincinnati based its intention not to extend service without limitation to the districts; as follows: That improvements to the present waterworks system may be neces
 
 *474
 
 sary to supply increasing demands of Cincinnati consumers and for possible or probable increases in the area and population of the city, and it was the declared purpose of council to afford itself an opportunity to study the needs, present and future, of the city in respect to assuring an adequate supply of water for the city and “to give areas outside the city limits opportunity to determine and indicate to the city their intention with respect to securing their future water supply and to allow their governing bodies to make arrangements to secure water in accordance therewith. ’ ’
 

 Presumption of good faith attends the action of legislative bodies and there is no challenge of the truth or validity of the announced policy and purpose of the city council.
 

 The position of the relator is based on the claim that the city manager and the superintendent of waterworks had duties; as public officers to furnish this water to the county mains regardless of the provisions of the ordinance.
 

 There can be no doubt, and indeed it is conceded, that the council of the city of Cincinnati had the sole authority to decide whether the city would continue to furnish its surplus water to surrounding territories. At the termination of the original contract made with the county commissioners, a further determination of the council’s future legislative policy was authorized and essential. It cannot be concluded that the city council was committed to the continuation of its previous policy and was without power to change or modify the course of conduct. Rather, it is axiomatic that in legislative matters the council has full power to act, restricted only by pertinent constitutional and statutory limitations. The recitals in the ordinance clearly evidence the adopted policy of the council,
 
 *475
 
 which presumably was in the interest of the, city of Cincinnati and its inhabitants. It is not disclosed that its action was in bad faith, arbitrary or unlawfully discriminatory against the relator which is charged with knowledge of the authority and duties of the city council.
 

 A writ of mandamus must necessarily be based upon a showing of clear legal duties which these officers are bound to perform and which they have not and are not performing. The record does not show that respondent Kellogg, city manager of the city, has any legislative authority at all; instead there is an admission that he is the chief administrative officer of the city. As such administrative officer he is clearly subject to. and bound by the statutes of the state of Ohio and the ordinances of the city of Cincinnati and he has no authority to act in contravention of any statute or ordinance unless such statute or ordinance is absolutely void.
 

 Both the respondents in selling" and delivering surplus water to the county sewer districts are doing so by the express authority of ordinance No. 164-1946. As stated before, this ordinance, including the prohibitions therein, is the declared policy of the council of Cincinnati and under it a clear legal duty is enjoined upon both of the respondents to do exactly the opposite of the action required of them by the writ of mandamus issued by the Court of Appeals.
 

 The respondents have no authority under the provisions of the ordinance to authorize such an extension. The ordinance by its terms expressly prescribes the manner and method by which the
 
 council
 
 shall authorize such extension and the circumstances under which extensions are to be permitted.'
 

 The argument is made that this ordinance is unconstitutional and void, but there is no claim that it is
 
 *476
 
 severable and part of it is valid and part invalid. If tbe city council’s declaration of policy contravenes constitutional provisions as contended, both tbe sale of the water and the refusal to permit extensions are equally component parts of this declared policy.
 

 Much is said about the rights of landowners to determine under the statutes of this state whether their lands will become annexed to the city. Under these statutory provisions, the residents of these sewer districts have the same right to decide whether their lands will become annexed to the city now as they had before the enactment of the ordinance in question. A declared policy of the city to extend its water service to its own inhabitants and to those of territory about to become a part of the city does not prevent any landowner or municipality from refusing to agree to permit annexation to the city. The difficulties of supplying their own water constitute economic problems and may have influence in determining the desirability of becoming a part of the city of Cincinnati, but annexation of their lands to the city of Cincinnati is not compelled.
 

 Likewise, much injustice can be done to persons within these sanitary sewer districts if main extensions may be constructed without limitation as 'the developers of subdivisions may desire and demand. The amount of water that a city may deliver outside its city limits is definitely restricted by law and, although the facts in this case do not disclose that this limitation has been reached, unlimited expansion may result in necessary curtailments. It is an inconsistent position to claim that the city is without power to limit the extensions of its service and at the same time concede that it may discontinue water service entirely.
 

 It is our conclusion that the record does not show the failure or refusal on the part of the respondents
 
 *477
 
 to perform any duty specially enjoined by-law and, therefore, no clear legal right of the relator to a writ of mandamus. It follows that the judgment of the Court of Appeals is reversed and the petition of the relator dismissed.
 

 Judgment reversed.
 

 Turner, Hart and Sohngen, JJ., concur.
 

 Weygandt, C. J., and Zimmerman, J., dissent.
 

 Stewart, J., not participating.