STATE, ex rel. McKAY, Plaintiffs-Relators, v. BOARD OF ELECTIONS OF MONTGOMERY COUNTY et, Defendants-Respondents.
MONNIER, Plaintiff-Appellant, v. BOARD OF ELECTIONS OF MONTGOMERY COUNTY et, Defendants-Appellees. (Two cases)
NORRIS, President et, Plaintiffs-Appellees, v. BOARD OF ELECTIONS OF MONTGOMERY COUNTY et, Defendants-Appellees, BOUCHER, Defendant-Appellant.

Ohio Appeals, Second District, Montgomery County.

Nos. 2237, 2238, 2239 and 2240. Decided April 13, 1953.

548

Hon. Mason Douglass, Dayton, for plaintiffs-relators in Case No. 2237.

Mathias H. Heck, Pros. Atty., Albert J. Dwyer, of Counsel, Dayton, for defendants-respondents in Case No. 2237.

Hon. Mason Douglass, Dayton, for plaintiff-appellant in Case Nos. 2238 and 2239.

Mathias H. Heck, Pros. Atty., Albert J. Dwyer, of Counsel, Dayton, for defendants-appellees in Case Nos. 2238 and 2239.

Pickrel, Shaeffer & Ebeling, Virgil Schaeffer, Iddings, Jeffrey & Weisman, Harry P. Jeffrey, Marshall & Smith, P. Eugene Smith, Cowden, Pfarrer & Crew, Charles P. Pfarrer, of Counsel, Dayton, for amicus curiae in Case Nos. 2238 and 2239.

Jas. K. Hoefling, Jas. T. Cline, Jack W. Hutton, George L. Houck, Dayton, for plaintiffs-appellees in Case No. 2240.

Mathias H. Heck, by Albert J. Dwyer, Dayton, for defendants-appellees in Case No. 2240.

Pickrel, Schaeffer & Ebeling, Iddings, Jeffrey & Weisman, Marshall & Smith, Cowden, Pfarrer & Crew, Dayton, for defendant-appellant, Roy D. Boucher in Case No. 2240.

## OPINION

By THE COURT:

Case No. 2237 is an action in prohibition originating in this Court, upon which a writ was issued and thereafter modified. To this petition an answer has been filed, to which a demurrer has been interposed. Cases Nos. 2238, 2239 and 2240 are appeals on questions of law from judgments of the Common Pleas Court. Case No. 2240 was first presented separately from the other numbered cases. The other cases, including the action in prohibition, were argued together.

The arguments were extensive, and in the course thereof many cases were cited and discussed. In this opinion it is not our purpose to again consider in detail the subject matter which was the basis of Judge Crawford's decisions in the Common Pleas Court, nor do we intend to comment on any considerable number of the many cases cited by counsel in briefs and oral argument. We do, however, want to give attention to the propositions that seem to be newly presented or especially emphasized in this Court, and others that have been urged by counsel for plaintiffs in the prohibition case, and in the cases in which plaintiff Monnier is the appellant.

We are in accord with the conclusions reached by Judge Crawford in the three cases upon which the appeals are prosecuted. We believe that he has correctly analyzed the sections of the statute and the provisions of the Constitution which control the questions presented.

In the declaratory judgment action, the plaintiff averred that the municipality of Kettering was a de facto city and should be so treated until it was a city de jure. Manifestly if this contention was supported by the judgment, the detachment proceedings, accomplished and prospective, would not have been effective. Those who opposed this contention nominally insisted that Kettering was a village and that the detachment proceedings, accomplished and prospective, were appropriate and authorized by statute. It may be that there was some suggestion of the unconstitutionality of the incorporation proceedings because the election approving the incorporation had as its effect the creation of a municipality which had a population in 1950, as determined by the Federal census of that year, of more than 22,000 persons.

It is singular that the trial judge did not, in his written opinion, devote any attention whatever to this contention, and is persuasive that it was not an issue. In the transcript of

the proceedings it does appear that the court recognized that there were three questions to be determined, namely: Whether Kettering was a city, a village or a township, and it was also stipulated that the status of Kettering should be determined upon plaintiffs' allegations of fact appearing in their petition.

It is well established that a constitutional question may not be raised for the first time in a reviewing court. To be reviewed the question must have been raised and determined by the trial court. **Thatcher v. The Pennsylvania, Ohio and Detroit Railroad Company, 121 Oh St 205; Stephenson v. State, 119 Oh St 349; Cincinnati v. Lindsay, 88 Oh Ap 117.** And by this Court in **Kuhn v. Wood, 34 Abs 265, 268; State v. Miller, 28 Abs 571, 576.** See **Vol. 2, O. Jur., Part 1, Sections 150, 502, pages 299, 896.** We are of the opinion that the constitutional question interposed in this Court was not specifically raised or determined in the trial court.

It is urged that **Article XVIII, Section 1, of the Ohio Constitution** precludes the incorporation of Kettering as a village, which we do not pass upon. The section provides:

"Municipal corporations are hereby classified into cities and villages. All such corporations having a population of five thousand or over shall be cities; all others shall be villages. The method of transition from one class to the other shall be regulated by law."

Pursuant to this classification and authorization the legislature enacted §3497 GC, which must be considered:

"Municipal corporations, which, at the last federal census, had a population of five thousand or more, shall be cities. All other municipal corporations shall be villages. Cities which, at any future federal census, have a population of less than five thousand shall become villages. Villages which, at any future federal census, have a population of five thousand or more, shall become cities."

In **Murray v. The State, ex rel. Nestor, 91 Oh St 220,** our Supreme Court held (1) that **Section 1 of Article XVIII of the Constitution,** relating to the classification of municipal corporations, adopted September 3, 1912, is not self-executing and (2) §§3497, 3498 and 3499 GC, regulate the method of transition of municipal corporations from one class to the other and are not inconsistent with that constitutional provision, and (3) a municipal corporation which had a population of less than five thousand at the last federal census did not advance to a city when it was made to appear by an official census taken by the municipal corporation subsequently thereto that it had a population of more than five thousand.

The authority which promulgates the result of the federal census as it relates to the transition of municipal corporations

from villages to cities and vice versa is set up by §3498 GC. That is the only statutory provision defining the procedure to accomplish the transition contemplated by the Constitution.

In the act on incorporation of villages, §3516 to §3546 GC, inclusive, there are set up two methods of incorporation. The first, §3517 to §3525 GC, inclusive, being an application by petition to the county commissioners. Sec. 3519 GC provides what the petition shall include, among which is the requirement that it set forth "the supposed number of inhabitants residing in the proposed corporation," and that at the hearing by the county commissioners provided for in the act, §3521 and §3522 GC, among the essentials to the order organizing a village is: "That there is the requisite population for the proposed corporation."

The following sections in the chapter, §3526 GC, et seq., are those which were involved in the proceeding to incorporate Kettering. Sec. 3526 GC authorizes the petition to the township trustees for incorporation, and requires that the statement as to the population in the proposed municipality be made as in the petition under §3519 GC. But the procedure outlined in §3527 GC, and defining what the trustees shall determine respecting the petition, enjoins upon them the obligation only to find that the persons who signed the petition are electors, that they reside within the limits of the proposed incorporation, and that a majority of them are freeholders. Having so determined, they have no choice but to order a notice for the election by the qualified voters resident in the territory at the time fixed, to vote for or against the incorporation.

We conclude then, that there is no provision prior to election whereby determination can be properly made if the territory contemplated to be included in the proposed municipality may be incorporated as a village. If the question is to be reached it must be raised thereafter, as has been done in the instant case. The determinative factor, in our opinion, is found in the language of the statute, namely:

"Municipal corporations, which, at the last federal census, had a population of five thousand or more, shall be cities. All other municipal corporations shall be villages. Cities which, at any future federal census, have a population of less than five thousand shall become villages. Villages which, at any future federal census, have a population of five thousand or more, shall become cities." (Emphasis ours.)

The territory incorporated by a vote of its citizens was not, in 1950 or prior thereto, a municipal corporation. Not having the status of a municipal corporation in the census of 1950,

under the authority of Murray v. State ex rel. Nestor, supra, it could not be subject to the transition from one class of municipality to the other until the census of 1960.

It is urged that sufficient consideration has not been given to §3577-2 GC in connection with §3577-1 GC. **Sec. 3577-2 GC** provides in part that:

"When territory is so detached, an apportionment of the property, funds and indebtedness of said village, shall be made between said village and said detached territory upon the basis of the respective tax duplicates in said village after such detachment, and in said detached territory."

**Sec. 3577-1 GC** expressly provides when the detachment from the village shall be complete, which is when the recorder has made a record of the proceedings incident to the election and certified and forwarded a transcript of such record to the Secretary of State. In the language of the section:

"The detachment of said territory from said village, shall thereupon be complete, * * *"

It is urged that the apportionment of property, funds and indebtedness, as provided under §3577-2 GC, will not be practicable, if at all possible, if the detachment proceedings are held to be valid. It is true, that as an essential to such apportionment there must be village officers, but it is obvious that without respect to the status of the village after detachment of territory, there will be a village of Kettering, and there will be elected officers who can carry out the mandate of §3577-2 GC. If the village as then constituted and the detached territory cannot come to an agreement the matter of apportionment of taxes, etc., is referred to the Probate Court. We do not believe that §3577-2 GC is of sufficient force to require the holding that territory may not be detached until officers are elected.

It is conceded by counsel for plaintiff, Monnier, that detachment proceedings may validly obtain after the election of officers for the village of Kettering. **Sec. 3536 GC** provides for the election of officers for corporations such as Kettering; that the election shall be a special election held at any time not exceeding six months after the incorporation, at a time to be fixed by the agent of the petitioners. Unless such special election is held, the first election of officers for such a corporation shall be at the first municipal election after its creation.

It is urged that there is an ambiguity created by conflict in this section and the sections pertaining to detachment, and that it should be resolved by the holding that the corporation is not so completed as to permit the institution of detach-

ment proceedings until after the officers are elected and qualified.

Such an interpretation, if it could be indulged, would simplify and possibly be a salutary and helpful determination of the whole matter. But there is nothing in either of the acts involved, the incorporation statutes or the detachment statutes, which requires the conclusion that it was intended that there must be a deferment of the detachment proceedings until the officers of the village are elected and qualified.

A cursory examination of the latter part of §3536 GC would lend support to the contention that it is mandatory that there be an election not later than the first municipal election after the creation of the village. In one instance, in **The Harbor Land Co. v. The Village of Fairport, et al., 7 O. O. 405, 23 Abs 44,** the village was incorporated in 1836, the officers were not elected until 1889, and it was urged that there could be no acceptance of a street by the Village of Fairport until 1889. In the opinion, at page 409, it is said:

"We hold that the status of the village was established in 1836 at the time of the incorporation and not by the election of officers at a later period; and that the status of the public grounds, streets, alleys, and highways were also fixed at the time of incorporation. If such is the fact that officers were not elected under the incorporation of the village until 1889, such would in no way change the status of the village or the rights vested therein at the time of incorporation."

In the action in prohibition and in support of it there is urged a proposition that had not heretofore been considered, namely; that the last proposed detachment proceeding, if effectuated, will bi-sect the village of Kettering near the central portion thereof. This fact may argue effectively against the approval by the electorate of any such proposal.

Supporting the claim of those who oppose the judgment in the Monnier case, No. 2239, and in support of the foregoing contention of plaintiff in the action in prohibition, **Article II, Section 30, of the Ohio Constitution** is cited. This provides:

"No new county shall contain less than four hundred square miles of territory, nor shall any county be reduced below that amount; and all laws creating new counties, changing county lines, or removing county seats, shall, before taking effect, be submitted to the electors of the several counties to be affected thereby, at the next general election after the passage thereof, and be adopted by a majority of all the electors voting at such election, in each of said counties; but any county now or hereafter containing one hundred thousand inhabitants, may be

divided, whenever a majority of the voters residing in each of the proposed divisions shall approve of the law passed for that purpose; **but no town or city within the same shall be divided,** nor shall either of the divisions contain less than twenty thousand inhabitants." (Emphasis ours.)

Manifestly this section does not relate to a village, but is confined to counties. If it has any application it is by inference, which could not be indulged against specific authorization of statute.

The requisite conditions to the submission of the question of detachment of territory are that the portion of the village to be detached shall be contiguous to an adjoining township, and comprise not less than one thousand five hundred acres of land. This seems to be the extent of the physical limitations in such proceeding. It will be noted that the requirement that any portion of the municipality to be detached must comprise not less than 1500 acres of land precludes a complete dissolution of the village.

It is our considered opinion that the legislation invoked and pertinent to the questions presented in the cases before this Court is entirely inadequate to meet the developments in communities and political sub-divisions of Ohio in recent years. It is incongruous and unfortunate that any territory, without limitation as to size or population, may be incorporated as a village.

It would also be more orderly and tend to stability of organization if the statutes would not permit detachment proceedings to be instituted until after the government of the village had been set up and was functioning. However, the facts here do not call upon us, nor are we permitted, to exercise any equitable jurisdiction. All questions must be determined upon interpretation of the applicable statutes.

We affirm the judgments of the Common Pleas Court in the appeals in Cases Nos. 2238, 2239 and 2240, and in Case No. 2237 overrule the demurrer to the answer to the petition, which answer we hold is a complete defense to plaintiff's action. We assume that no further pleading is contemplated. If so, judgment could be entered dismissing plaintiff's petition and dissolving the writ heretofore issued.

We will cooperate with counsel to get an early entry filed journalizing this opinion so that opportunity may be afforded to any party if he desires to prosecute an appeal to the Supreme Court.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.