232

LIMA M & M INCORPORATED, Plaintiff, v. DAVIS et, Defendants.
FRYSINGER, Plaintiff, v. DAVIS et, Defendants.
ADAMS, Plaintiff, v. DAVIS et, Defendants.
DRAY, JR., Plaintiff, v. DAVIS et, Defendants.
HARBER, Plaintiff, v. DAVIS et, Defendants.

Common Pleas Court, Allen County.

Nos. 45401, 45403, 45404, 45405 and 45408. Decided May 10, 1960.

234

Mr. Raymond F. Roberts, for plaintiff M & M Inc.
Messrs. Dickason, Romey & Hunt, for all other plaintiffs.
Messrs. Light, Siferd & Light, Mr. Anthony J. Bowers and Messrs. Marshall, Melhorn, Bloch & Belt, for defendants.

(McNEILL, J., of Van Wert County, sitting by assignment.)

For further history see *Omnibus Index* in bound volume.

McNEILL, J. This is a consolidation of several suits contesting the incorporation of the Village of Fort Shawnee. The contestants' objections fall into two general classes: one, contesting the validity of the procedures; and the other contesting the equities.

On July 2, 1958, the petition for incorporation was presented to the clerk at a meeting of the trustees, who, in turn, presented it to the Board of Trustees of Shawnee Township. Thereupon the Trustees set a hearing date for July 23rd. At a meeting on July 3rd, it was re-set for July 30th, so there would be more time for advertising.

Section 707.16, Revised Code, provides:

"The petition * * * shall be filed with the clerk * * * and the clerk shall present the petition to the board at a regular or special meeting * * * to be held within thirty days after

receipt of petition by the clerk. At this meeting the board shall fix the time and place for hearing of the petition, which shall not be later than thirty days after the petition is presented to the board.''

The question is raised whether the trustees had the right, under Section 707.16, Revised Code, to change the meeting date. The statute provides the meeting must be within a thirty day period, but is silent as to whether it may be altered within the thirty days period, after once being set.

In construing statutes, the Court frequently looks at the design of the statute, 37 Ohio Jurisprudence, Section 363, P. 662; and what is sought to be accomplished, 37 Ohio Jurisprudence, Section 368, P. 669. In examining the old and new statute, it is obvious that the purpose of this statue is to assure the petitioners of a prompt hearing, and to assure both proponents and opponents of a public meeting, and public proof, with adequate notice. Did the legislature intend that if a mistake was made in the notice, if a printer made an error, or for any minor mistakes, the trustees could not correct the matter? The Court does not think so. The important part of the statutory changes were to insure a prompt hearing at a public meeting, with adequate notice of the meeting. As long as the trustees do not exceed the thirty days, a change in date may be made, as such right is not prohibited in the statute. A similar construction was used in the case of *Libby et al v. Hosea Paul*, 17 N. P. n. s., 433. Also see *State, ex rel. Moore*, v. *Trustees of Weathersfield Township*, 161 Ohio St., 38.

However, if a strict construction is applied, this in no wise aids the opponents. Under the rules of strict construction, each word must be given meaning. 37 Ohio Jurisprudence, Section 401, P. 719. The statute in question says:

''At a regular or special meeting of the board to be held within thirty days *after* the receipt of the petition by the clerk.''

The first meeting held by the Board *after* the petition was presented was the meeting of July 3rd, as the petition was originally presented in the *middle* of the meeting of July 2nd. Therefore, under strict construction, any action taken by the board on July 2nd was without authority and invalid. The only valid action would be that of July 3rd. Thus, with either con-

struction, although the court favors the former, the meeting was properly set.

The next question is whether proof that the signatures were freeholders was properly presented. There is a finding before the Board that all things required by law had been done. The Clerk, called by the opponents, testified that the census report was actually received on July 30th, at the meeting, although the minutes of the trustees meeting of the 31st show it received at that time. However, overlooking this evidence for a moment, the record also shows that the public meeting was continued from July 30th to August 1st, and there is an inescapable conclusion that these matters which were undisputably before the board on July 31st were properly introduced and carried by the board into the August 1st meeting. A board is presumed to act legally, unless the contra is shown. *James Reynolds et al* v. *John H. Schweinefus*, 27 Ohio St., 311; *Titus* v. *Lewis*, 33 Ohio St., 304; *The Lessee of J. J. Coombs* v. *John Lane*, 4 Ohio St., 112; *Frank Dalrymple* v. *State*, 5 O. C. C. n. s., 185. In affirming this principle, the Supreme Court, in *Lewis* v. *Laylin*, 46 Ohio St., 663, stated:

"1.(a) In construing the records of inferior tribunals, acting within the scope of their authority, to ascertain whether or not they have followed certain statutory requirements, technical precision will not be required; it will be sufficient if it appear, though informally, from a reasonable construction of the whole transcript of the proceedings, that these requisites have been observed."

For a case involving incorporation, see *E. S. Libby* v. *Hosea Paul, supra*.

The last procedural question is that the trustees did not order the village incorporated subject to the vote of the people as provided in Section 707.16, Revised Code. On August 1st, after the continued public meeting, the board then found that all matters required by law had been complied with, which includes a finding of each specific thing necessary for the incorporation, and includes a finding of the necessary proofs of the petition. (See cases just cited.) The trustees then ordered the proposition placed on the ballot and ordered the notice for the election. This is in such unmistakable terms there is no doubt

everyone was informed that if the majority of the people voted in favor of it, the Village of Fort Shawnee would be incorporated.

At first glance, Section 707.16, Revised Code, might imply that the exact words of the statute are necessary; but Section 707.16, Revised Code, specifically refers to Section 707.18, Revised Code, and Section 707.18, Revised Code, clearly shows that the actual effective time of any declaration of incorporation is after the matter has been voted affirmatively. These statutes are clearly in Pari materia.

In interpreting statutes, the courts do not interpret them so useless or unnecessary things are required to be done. 37 Ohio Jurisprudence, Section 348, P. 634. Also see: 37 Ohio Jurisprudence, Section 649, P. 635. In examining these two sections, it appears the exact utterance of the last words as set forth in the statute are meaningless, as incorporation specifically comes later under Section 707.18, Revised Code. These statutes must be harmonized. 37 Ohio Jurisprudence, Section 342, P. 620. The requirement of this statute is to make a finding that all things have been properly done, and when this happens, it is mandatory that it be put on the ballot and proper notice given. This was done.

A similar matter was before the Supreme Court in *State, ex rel. Moore, supra*. The trial court found that the trustees were wrong in disapproving the petition, and an order of mandamus was issued. The Trustees were not ordered to declare the village incorporated subject to the vote of the people, but were ordered simply to place the matter upon the ballot. The language used was almost exactly as that used here. The decision of the trial court was affirmed by both the appellate court and the Supreme Court, without any change in the wording of the writ of mandamus. It is true, the matter was not directly raised in issue; it is also true that all three courts approved such a wording without any comment as to its form.

This brings us to the equitable matters in this case. In this connection, not only will the cases relating to incorporation be examined, but also the cases relating to annexation. Annexation by another corporation, Section 709.35, refers the procedure to Section 709.03, Revised Code, which is general annexation.

Section 709.03, Revised Code, relates the procedure in such matters to Sections 707.01-.30, Revised Code. Thus, the procedures in both cases are controlled by the same statutes. *Shugars* v. *Williams,* 50 Ohio St., 297; *Village of Brook Park* v. *City of Cleveland,* 26 Ohio Opinions, 536.

It is true the territory is composed of 14.62 square miles. Size alone is not a controlling factor. In the case of *E. S. Libby* v. *Hosea Paul, supra,* an incorporation of 3,000 acres was approved, with a population of 600. Here approximately 9,000 acres are involved, with a population of over 5500. For other cases, see: *Village of Brook Park* v. *City of Cleveland, supra; R. Hall* v. *J. C. Siegrist,* 13 O. D., 46; *Ohio Edison Co.* v. *McElrath,* 60 Ohio Opinions, 462. In addition, the case of *The Geauga Lake Improvement Assn.* v. *Lozier,* 125 Ohio St., 565, must be considered. In that case the Court held that the incorporation was improper as the territory was too small. The jist of the case is that the general development of all the territory must be considered in considering the question of size. To be unreasonably large, size alone is not the factor, but size in relation to the makeup and the problems of the territory.

There is no gerrymandering of the territory, but the territory is on fairly regular lines. All but four of the sections have 300 or more people per square mile, or are so completely industrialized that there is practically no population, which under the legislative standards indicates suitability for incorporation. Of the four sections under 300, one is 200; another is a section adjacent to the fastest growing part; and the other two are admittedly included so that they would not be cut off from the balance of the township and left by themselves. The area is all industrial, or developed or undeveloped land. The evidence shows transfers have not been made for farming purposes for at least fifteen years. With the exception of water, all parts of the territory lack the same municipal services, and the rate of growth indicates there is a definite need for all types of municipal services. In certain parts of the proposed area of incorporation, sewage is the great and pressing problem.

There is no showing that the development has grown so fast in such a short period of time that the populous sections have had no opportunity for any other recourse, as the Chip-

man and Berryman additions, closest to Lima, have been in existence from 15 to 40 years. The heavily industrialization in Sections 1, 11, and 12 contain the Standard Oil Refinery; Westinghouse Electric Corporation; Ohio Steel Foundry; Buckeye Pipe Line Company; Ohio Oil Company; Lima Ordinance Depot; Shell Oil Company; and other plants. It appears that the tax basis is adequate for municipal services, being the ideal combination of residential properties with considerable industrial development. The perils of purely a residential development as a tax basis is not present. The industrial properties have not objected to the incorporation as was the case in *Ohio Edison Co.* v. *McElrath, supra.* If the ones who would pay the major portion of tax money do not object, it is hard to see how this may be a ground of objection of incorporation by others. All citizens of the district are in the same school district and the problem of transferring the territory from one school district to another is not present.

Thus, it cannot be said from the state of the evidence, in these respects, that the incorporation is inequitable. The mere fact that some of the people do not want the incorporation is insufficient. *State, ex rel.* v. *Cincinnati,* 52 Ohio St., 419; *Ohio Edison* v. *McElrath, supra; Village of Brook Park* v. *City of Cleveland, supra; Brubaker* v. *Montgomery County Board of Elections,* 71 Ohio Law Abs., 99; *State, ex rel. McKay,* v. *Board of Elections of Montgomery County,* 65 Ohio Law Abs., 547.

This brings us to the last major consideration, and that is the question of water. The industrial users and the residents of Chipman and Berryman Additions are supplied with water from the City of Lima. The residential users of the territory have been notified by the City of Lima that if the incorporation goes through that they will lose their water. Such notice has not been given to the industrial users.

The Court is not concerned with the rightfulness or wrongfulness of the policy of the City of Lima with regard to water, as there is much to be said on the side of the central city. However, they are not a part to this matter. Suburbs are formed around cities, and suburbs are often dependent upon the main city for many services, and those living in the suburbs use the streets and highways of the central city in coming from and

going to work, and they often work in the central city. For many years, central cities have attempted to combat the suburban trend through its water supply to force annexation. Some cities such as Columbus have been very successful; other cities like Cleveland and more recently, Toledo, have given up the fight in this respect and are supplying water wherever it is desired. Last November the Constitution of the State of Ohio was amended so that a city is not limited on the water it may sell outside its limits.

This has always been a major battle which has been fought around any growing city, and probably will continue to be so fought through the years. The Lima water policy is not in question here, but if incorporation is successful, undoubtedly it would be the subject of another law suit. In passing, this Court only wants to call attention to the case of *State, ex rel. McCann* v. *City of Defiance*, 167 Ohio St., 313; 4 Ohio Opinions 2d, 369. The Supreme Court of Ohio has indicated that the City has control over its water supply, and under home rule cannot be hampered by statutes attempting to limit it. However, the Court in its ruling indicated a city may be subject to the common law rules relating to utilities, citing the following cases: *The Western Reserve Steel Co.* v. *Village of Cuyahoga Heights*, 118 Ohio St., 544; *Butler* v. *Karb*, 96 Ohio St., 472; *State, ex rel. Indian Hill Acres* v. *Kellogg*, 149 Ohio St., 461.

It is true that the matter was not directly before the Court, but this Court is unable to conceive of any reason for including those cases in the opinion except in the nature of a warning. In the case of *State, ex rel. Indian Hill Acres* v. *Kellogg, supra,* the Supreme Court approved an action of the City of Cincinnati to cut off all water to the users of the sewer district, after providing a five year notice of discontinuance. They held that the City had acted equitably and could do so. In that case, there was a five year notice, and it affected all users of the district. This court does not know what the Supreme Court will do in a proper case, and only wants to call these decisions to the attention of all parties.

There is no doubt the City of Lima, with proper notice, as in the Cincinnati case, would have the right to cut off the water; but under what limitations and conditions it must do so remains

for the future. The evidence is undisputed that the proposed Village of Fort Shawnee could readily build a municipal water plant, which would supply all the present users of city water, and would also supply the other most populous sections in the proposed village, and that the same would be economically feasible.

This brings us to the only equitable question: is the mere fact that somebody who receives water from another source may lose it by the incorporation sufficient of itself to make the incorporation inequitable?

These subdivisions have been in existence 15 to 30 years. They have had water from the City of Lima, but they have no other municipal services, and the record is clear that the sewage problems in these two subdivisions are probably the worst in the whole territory.

These districts have not been formed within the last year or two and are not being gobbled up before they have had an adequate opportunity to annex themselves to the City of Lima, which supplies its services. The record is void of any effort on the part of these residents at any time to be annexed to the City of Lima, and is also void of any action on the part of the City of Lima to annex them. In fact, the inescapable conclusion reached from the testimony is that many of the residents were content to have water from Lima, be in the Shawnee school district, and be in a township and have the smaller rate of taxation, rather than be annexed to the City of Lima. They failed to observe the population growth of this section, with its greater and greater industrial and residential development; the growing problems of sewage and the need for solving other problems; and failed to observe the handwriting on the wall, that either a separate incorporation would be formed or they would be annexed to the City of Lima. They tried to maintain the status quo and now claim that since the inevitable has happened they now want annexation to Lima, after failing to take action for many years.

Thus, under all the facts and circumstances of this case, the mere fact that they may lose water from their present source at a time which only will be determined in a proper case presented directly in point, is insufficient to show that the incorpor-

ation would be inequitable, as water may be supplied from the new source. If this were not true, anyone who receives any water from any city would not be subject to incorporation; and any new corporation could not be formed near any central city. This is not the legislative policy as shown by the incorporation statutes.

In considering this problem of equity, the Court feels that it also must discuss the position of those protesting the proposed village. If the incorporation is formed, are they without remedy if they desire otherwise? They certainly are not. Just as they have been carried into incorporation, they may go out of the corporation, and even carry others who may so object with them. Those in turn may come back into the Village.

Section 707.39, Revised Code, provides that 15% of the inhabitants residing within any portion of a village, such portion being contiguous to an adjoining township, comprised of not less than 1500 acres of land, may file a petition with the board of elections to be detached, or to be detached and a new township erected. If this is done, it is mandatory that such go on the ballot and only those parties in the territory seeking detachment may vote upon it. The sections in which Chipman and Berryman additions lie are contiguous to American Township. If they so desired, Section 3 and one-half of Section 2, and Section 4, which would comprise more than 1500 acres, could vote to detach. Section 4 has few voters and could be taken out with the others, whether they wanted to or not; or the parties can pair themselves with industrial property adjacent to them and so arrange a territory of 1500 acres where they would have a favorable vote. If anybody was carried out that did not want to, they could apply to the new village to annex through annexation proceedings. In the case of *Village of Brook Park* v. *City of Cleveland, supra,* two voters living at opposite ends of industrial areas did just that.

Likewise, under Section 709.35, Revised Code, which provides when a city and village adjoin each other and the inhabitants of any territory constituting any part of such village desire to be annexed to such adjoining city, they may do so by an application to the legislative authority of the City upon written request of two-thirds of the voters of the territory sought to be annexed. In that case, only those voters living

in that limited territory have a say in the matter. The wishes of the village are immaterial. A look at the map shows that the Chipman Addition abuts the City of Lima, and the Berryman Addition abuts the Chipman Addition.

If the incorporation takes place, Fort Shawnee will be a village. Section 707.20, Revised Code, provides that the incorporation only becomes complete on being certified by the Secretary of State. It is also clear that the filing of the injunction holds up the certification. *Eagle* v. *Schaefer*, 74 Ohio Law Abs., 330, 331; *Hicks* v. *Schaeffer, Eagle* v. *Schaefer,* 161 Ohio St., 302; *Branson* v. *Cain,* 76 Ohio Law Abs., 21; Title 13, U. S. C. A. Section 141-145, provides that the census is only effective as of April 1st. Thus, there can be no incorporation until after April 1st, and this territory is a township at the time of the census. See: *City of Twin Falls* v. *Koehler,* 123 P. 2d, 715; *Underwood* v. *Hickman,* 39 S. W. 2d, 1034; 1950 A. G. O., 589; 1941 A. G. O., 551; 1951 A. G. O. Case No. 2611.

It is also clear that under Section 707.16-20, Revised Code, the initial incorporation, regardless of size, must be that of a village. *State, ex rel. McKay,* v. *Board, supra.* It is also clear under our statute the advancement from a village to a city may only take place as a result of a federal census, regardless of provisions in the statute that seem to provide otherwise. *Murray* v. *State, ex rel. Nestor,* 91 Ohio St., 220; *State, ex rel. Brubaker,* v. *Brown,* 163 Ohio St., 241. See Article—44 Ohio Opinions, 429, in respect to census and municipalities.

Although the village is not complete in all functions until the election of officers, for the purpose of detachment or annexation the village is complete upon its actual formation, which is the certification by the Secretary of State. *State, ex rel. McKay* v. *Board of Elections, supra.*

That the territory adjoins a township and comprises 1500 acres are sole requisite for detachment. *State, ex rel. Loofbourrow,* v. *Board of County Commissioners,* 167 Ohio St., 156; *Village of Beachwood* v. *Board of Elections of Cuyahoga County,* 167 Ohio St., 369; *Leach* v. *Collins,* 123 Ohio St., 530.

The fact that some parties do or do not get to vote upon the matter in any of these proceedings is not of itself unequitable, as this is purely a political matter. *State, ex rel.* v. *Cincinnati, supra; Samuel Blanchard* v. *Frederick Bissell,* 11 Ohio

St., 96; *George Powers* v. *The County Commissioners of Wood County*, 8 Ohio St., 285; *State, ex rel. Loofbourrow,* v. *Board, supra.*

In a very similar situation many cases have arisen therefrom detailing the law in these matters. In the incorporation of the Village of Kettering, the situation was very similar to this. It was formed during a census period and was incorporated under protest. Detachments were made before the village officers were elected, and others attempted to do so afterwords. See: *State, ex rel. McKay,* v. *Board, supra; Brubaker* v. *Montgomery County Board, supra; State, ex rel. Coatney,* v. *Horstman,* 71 Ohio Law Abs., 164; *State, ex rel. Graef, Jr.,* v. *Board of Elections, Montgomery County,* 61 Ohio Law Abs., 385; *State, ex rel. Hunt* v. *Montgomery County Board of Elections,* 72 Ohio Law Abs., 386; *State, ex rel. Brubaker,* v. *Brown, supra.* Also see: Articles on Annexation and Detachment, 13 Ohio State Law Journal, 503 and 6 Western Reserve Law Journal, 146.

It is clear from these cases that the process of detachment, annexation, etc. can go on until there is finally a federal census taken, whether a decennial or a special census, as requested by the village after it is properly formed. A decision in this may result in an incorporation of Fort Shawnee. It will not prevent those objecting herein from detaching from the new corporation and becoming a new township, or from annexing to the City of Lima.

These parties may seek annexation to the City of Lima, and the territory may be as large or as small as they select to submit to a vote. To be annexed it will take the signatures of two-thirds of the territory they select contiguous to the City of Lima, and if any part of such selected territory is contiguous, it all is contiguous to the City of Lima, plus an acceptance by the City of Lima.

To be detached, it takes 1500 acres, and some of such must adjoin a township. If anybody is detached under such proceedings who does not want to be, they are free to seek annexation again. After detachment, they are, of course, free to seek attachment to Lima if they desire. This has been the history of Kettering.

Considering this with all the other questions, it cannot be

said this incorporation is inequitable. The objectors are not without remedies and are still left free to determine their destinies. The proceedings are legal and the only equitable problem raised is that of water, which of itself is insufficient. The fact that some object is a political matter and not a judicial matter for the Courts. The Court finding the original resolution is sufficient, is not considering the effect of the amended resolution.

In addition to the general water question, in regard to the M & M Corporation the record is clear they have never had water, have tried and have never been able to secure water from the City of Lima, and admit that the cost factor has been too great.

Della Adams objects because the road and bridge fund of Shawnee Township will suffer. However, it is inescapable that the amount of roads remaining will be less, and the only testimony before the court is that the remaining funds are adequate, and are proportionately more than in some other townships in Allen County. However, this is not a question in these cases. *Brubaker* v. *Montgomery County Board of Elections, supra; State, ex rel.* v. *Cincinnati, supra; Village of Brook Park* v. *City of Cleveland, supra; McClintock* v. *Cain, supra; Ohio Edison Co.* v. *McElrath, supra; Hall* v. *Seigrist, supra.*

Thus, the Court is passing the question of whether or not she, residing outside the proposed corporation, is or is not a proper interested party.

In considering all the questions in the case, it must be remembered the plaintiffs have the burden. One court has held that the burden of proving the invalidity of the incorporation rests upon the objectors to do so by clear and convincing evidence. *McClintock* v. *Cain, supra; Schurtz* v. *Cain,* 75 Ohio Law Abs., 132. However, a reading of the cases of *Eagle* v. *Schaefer,* 74 Ohio Law Abs., 300, 331; 166 Ohio St., 302; would indicate otherwise. However, it is clear that the burden is upon the objectors. *Roush* v. *Barthalow,* 104 N. E. 2d, 697 (Motion to Certify Overruled, 156 Ohio St., 452); *Geauga Lake Improvement Company* v. *Lozier, supra.*

The opponents have raised many legitimate problems, but in light of all the evidence and circumstances have failed to carry them by a preponderance of the evidence.

The Court realizes that these problems are only before the court as the case must be initiated in the trial court before it may be reviewed by a higher court. The Court has detailed its opinion to the extent it has, only so all persons concerned may be better enabled to understand the issues and the problems. What may finally result will be determined not only by the Courts, but by the people themselves.

Therefore, it is the opinion of the Court that the petitions of the plaintiffs should be dismissed; the injunction dissolved; and that the incorporation proceed according to law.

Journal Entry may be prepared accordingly. Costs to plaintiffs.