**CITY OF CLEVELAND, Plaintiff,**

v.

**The CLEVELAND ELECTRIC ILLUMI-NATING COMPANY, Defendant.**

Civ. A. No. C75–560.

United States District Court,
N. D. Ohio, E. D.

Oct. 15, 1980.

**1304**

William B. Norris, Hahn, Loeser, Freedheim, Dean & Wellman, James E. Young, Thomas E. Wagner, Director of Law, City of Cleveland, Cleveland, Ohio, for plaintiff.

John Lansdale, James P. Murphy, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

By memorandum filed July 7, 1980, the defendant in this proceeding, the Cleveland Electric Illuminating Company (CEI), asserts that plaintiff-City of Cleveland (City) is precluded from selling surplus power outside the city pursuant to Article XVIII, Section 6 of the Ohio Constitution except when such surplus is the residue of what is locally generated to serve city customers. By memorandum filed October 8, 1980, plaintiff-City asserts that the Constitution does not bar a municipal utility from selling surplus energy, however obtained, to the extent of 50% of that supplied to the inhabitants of the city. The matter is presently before the Court for its determination.

Article XVIII, Section 6 of the Ohio Constitution reads, in pertinent part:

Any municipality, owning or operating a public utility for the purpose of supplying the service or product thereof to the municipality or its inhabitants, may also sell and deliver to others * * * in an amount not exceeding * * * fifty percent of the total service or product supplied by such utility within the municipality * * *.

Confronting the Court is an interpretation of the cited constitutional provisions under circumstances where the City urges its right to deliberately create a surplus, from whatever source, of up to 50% more than its requirement to supply its inhabitants for sale outside of the city.

Ohio legal precedent provides that the city council of a municipality has full power to determine the policy in regard to the quantity and manner of sale of a utility surplus, subject to the Constitutional limitation that the quantity of surplus may not exceed 50% of the requirement necessary to supply its inhabitants.

The conclusion is founded in the "Home Rule" Amendment proposed by a constitutional convention in 1912. Its passage provided that "the sovereign people of the state expressly delegated to the sovereign people of the municipalities of the state full and complete political power in all matters of local self-government." *Perrysburg v. Ridgway*, 108 Ohio St. 245, 140 N.E. 595 (1923) *quoted in Northern Ohio Patrolmen's Benevolent Assn. v. Parma*, 61 Ohio St.2d 375, 402 N.E.2d 519, 523 (1980).

The convention "was not content to leave the subject of the public utilities of the cities" to the legislature and so included "specific provisions touching that subject" in the amendment. *Dravo-Doyle Co. v. Orrville*, 93 Ohio St. 236, 242, 112 N.E. 508 (1915).

The operating powers of a utility were construed in *Butler v. Karb*, 96 Ohio St. 472, 117 N.E. 953 (1917) to be "proprietary in their character and in the management and operation of such plant municipal officials are permitted wide discretion." Syllabus 1, at 472, 117 N.E. 953.

In *Travelers Ins. Co. v. Wadsworth*, 109 Ohio St. 440, 142 N.E. 900 (1924) the Court re-affirmed that the Constitutional power to operate a municipal light and power plant is a proprietary power and held that "in the absence of specific prohibition, the city acting in a proprietary capacity may exercise its powers as would an individual or private corporation." Syllabus 2, at 440, 142 N.E. 900.

This proprietary nature was the basis for concluding that a municipality is not barred from making a profit on the operation of its electric power system. *Niles v. Union Ice Corp.*, 133 Ohio St. 169, 12 N.E.2d 483 (1938).

In *State ex rel. Indian Hill Acres, Inc. v. Kellogg*, 149 Ohio St. 461, 79 N.E.2d 319 (1948), the court concluded that the city of Cincinnati could not be compelled to sell surplus water despite a municipal ordinance which restricted the sale of surplus to those with existing connections or to cases of great hardship.

The Court, in denying the relator's request for a mandamus, held in the Syllabus that:

In the sale and delivery of the surplus product of a municipally owned public utility to others, the council of the municipality has full power to determine the policy to be followed in regard thereto, restricted only by pertinent constitutional and statutory limitations. (Syllabus 2).

And that:

* * * the municipality may sell and dispose of its surplus products *in such quantities and in such manner* as the council thereof determines to be in the best interest of the municipality and its inhabitants. (Syllabus 3, emphasis added). *Indian Hill, supra*, 79 N.E.2d at 320.

The power of the city council to manage the surplus of an electric utility without interference from the General Assembly was confirmed in *State ex rel. McCann v. City of Defiance*, 167 Ohio St. 313, 148 N.E.2d 221 (1958).

The Court struck down a State Code provision that required municipal electric systems with existing lines outside the city to furnish power to customers along those power lines out of the surplus available for external sale.

In the Syllabus, the court ruled that:
The General Assembly has no power to * * * [limit] the * * * authority of a municipality, * * * to sell and deliver to others the portion of the surplus product of such utility that it is authorized by * *

the Constitution to sell and deliver to such others. (*McCann, supra*, 148 N.E.2d at 221, citations omitted).

The Court refers to "the portion" of surplus which is "authorized" by the Constitution for resale and beyond the interference of the General Assembly. The court cites to *Karb, supra*, and *Travelers Ins., supra*, which affirmed the "wide discretion" given to municipal officers to operate a "proprietary" function in the manner of a private company.

Finally, in the only case discussed by both instant parties, *State ex rel. Wilson v. Hance*, 169 Ohio St. 457, 159 N.E.2d 741 (1959), the court considered the surplus sale operation of the city of Piqua's electric system.

In that case, the Court noted that although the framers of the Constitution recognized the value of municipal utilities and "recognized that such an operation could create a surplus product" which could be sold outside the city, "they clearly intended to limit municipalities primarily" to serving their residents and to prevent them from "entering into the general public utility business" outside the city. *Hance, supra* 159 N.E.2d at 744.

The instant defendant urges that the limitation of primarily local service means, as a matter of law, that any surplus be required to be inadvertent and merely incidental to local service.

The Court in *Hance* does not agree. After noting that the framers intended to limit the external operations of municipal utilities, the Court queried: "Does the present contract go beyond this limitation?" *Hance, supra*, 159 N.E.2d at 744.

Responding to its question concerning the limitation imposed by the framers on the surplus sales of municipal utilities, the Court stated:

[i]f the number of kilowatt hours supplied to noninhabitants is in excess of 50 per cent of the number of kilowatt hours supplied within the municipality, the municipality is violating Art. XVIII, Sec. 6 of the Ohio Constitution. *Hance, supra*, 159 N.E.2d at 744.

It is clear, from the Court's first observation, that the framers sought to prevent municipal utilities from engaging in unlimited competition with private utilities. It is equally clear, from the test adopted in *Hance,* that the method by which the framers sought to limit municipal utilities was by a restriction on outside sales to 50% of service it supplied within the city.

This conclusion finds support in the case authority dating back to the inception of the amendment. It is also in accord with the Constitutional basis of Sections 4933.81 to 4933.90 of the Ohio Revised Code which create "certified territories" within which a utility is free from competition and beyond which it may not compete. Nothing in these sections, adopted in 1978, "shall be construed to affect the right of municipal corporations to generate, transmit, distribute or sell electric energy." Section 4933.-87, Ohio Revised Code.

It should also be noted that the right of a municipality to intentionally create a surplus up to 50% of what it supplies locally is not dependent upon the source of supply being local generation.

First, the surplus sale formula of Section 6 of Article XVIII permits the sale to others "in an amount not exceeding * * * fifty per cent of the total service or product supplied by such utility within the municipality, * * *." The test adopted by *Hance* also measures what is supplied and not the source of supply.

Next, Section 4 of Article XVIII permits a municipal utility, "the product or service of which * * * is to be supplied to * * * its inhabitants" to "contract with others for any such product or service." This clearly permits the source of a municipal utility's supply to be outside the city.

It is the rule of construction for Sections 4, 5 and 6 (the utility provisions) of Article XVIII that they must be construed *in pari materia. State ex rel. Campbell v. Cincinnati Street Railway Co.,* 97 Ohio St. 283, 119 N.E. 735 (1918).

For the foregoing reasons, the Court concludes that, as a matter of law, the plaintiff is not barred from creating, by purchase of power, a surplus of up to 50% more than what it supplies to its inhabitants for the purpose of distributing or selling such energy outside the city.

IT IS SO ORDERED.