[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
This appeal comes to us from a judgment issued by the Williams County Court of Common Pleas. It involves the sale of excess electric power by a group of municipal corporations to an industrial corporation. Because we conclude that the non-municipal utility company, which previously supplied the electricity, has standing to bring the instant suit and the trial court erred in granting appellees' Civ. R. 12(B) motion for dismissal on the pleadings, we reverse.
In September 1995, appellant, Toledo Edison Company, filed a complaint for injunctive and declaratory relief against appellees, the city of Bryan and villages of Pioneer, Montpelier, and Edgerton. Pursuant to an amended complaint and a supplemental complaint,[1] appellant essentially alleged that the municipalities are violating the Ohio Constitution by selling power to Chase Brass Copper Company, Inc. ("Chase Brass"), an industrial corporation situated outside the municipalities' boundaries. Appellant also alleged that appellees are violating the fifty percent limit imposed on such sales by the Ohio Constitution. Appellant was the long-time electric service provided to Chase Brass, and Chase Brass was permitted to join in the action as an intervenor.
Appellees jointly moved to dismiss the action, arguing that appellant had no standing and that the complaint failed to state claims for which relief could be granted. Appellant responded in opposition to this motion.
On August 18, 1998, the trial court found that appellant did not have standing to sue appellees. The court further concluded that even if appellant had standing, its claims were without merit. The court reviewed and adopted the opinion by Judge Robert Krupansky in Cleveland v. Cleveland Elec. Illum.Co. (N.D. Ohio 1980), 538 F. Supp. 1303 which gives a municipality the right to sell surplus electric energy created by purchase.
Appellant now appeals that decision, setting forth the following three assignments of error:
 "I. TOLEDO EDISON HAS STANDING TO OPPOSE THE ACTIONS OF THE DEFENDANT-APPELLEE MUNICIPAL CORPORATIONS OUTSIDE OF THEIR BOUNDARIES, EITHER ON ITS OWN ACCOUNT, AS A TAXPAYER OR BOTH.
 "II. THE OHIO CONSTITUTION DOES NOT PERMIT MUNICIPAL CORPORATIONS TO FUNCTION AS PRIVATE POWER BROKERS UNDER THE GUISE OF SELLING SURPLUS PRODUCT, WHERE THE ALLEGED SURPLUS IS ARTIFICIALLY CREATED BY PURCHASE OF POWER FROM OTHERS SOLELY FOR RESALE OUTSIDE MUNICIPAL BOUNDARIES.
 "III. THE TRIAL COURT HAS IMPOSED IMPROPERLY HIGH PLEADING STANDARDS ON TOLEDO EDISON'S CLAIMS CONCERNING THE FIFTY PER CENT LIMITATION OF SECTION 6, ARTICLE XVIII OF THE OHIO CONSTITUTION." [SIC]
We have permitted intervenor Chase Brass to file an amicuscuriae brief.
 I.
Appellant, in its first assignment of error, argues that the trial court erred in determining that it did not have standing to bring suit against the municipalities.
We have previously determined that a corporation allegedly affected by the passing of a city ordinance has standing to bring a declaratory judgment action pursuant to R.C.2721.03.[2] See Westgate Shopping village v.Toledo (1994), 93 Ohio App.3d 507. Appellant has alleged in its complaint that it will suffer injury due to the passage of the resolutions and ordinances by appellees. Regardless of any other theories or statutory authority, appellant has alleged sufficient facts to confer standing pursuant to R.C. 2721.03. Therefore, we conclude that the trial court erred when it determined that appellant had no standing to bring a declaratory judgment action against appellees.
Accordingly, appellant's first assignment of error is well-taken.
 II.
Appellant, in its second assignment of error, claims that appellees' purchase of electric power for resale as surplus to non-inhabitants is beyond the powers granted by the Ohio Constitution.
Section 4, Article XVIII of the Ohio Constitution, provides that:
 "Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service * * *." (Emphasis added.)
Section 6, Article XVIII then provides that a municipality which owns or operates a public utility may also sell and deliver to non-inhabitants, "the surplus product of any other utility in an amount not exceeding * * * fifty per cent [sic] of the total service or product supplied by such utility within the municipality." It has been held that, as a matter of law, a municipality is not barred from creating, by purchase of power, a surplus of up to fifty percent more than what it supplies to its inhabitants for the purpose of distribution or selling outside the city. Cleveland v. Cleveland Electric Illum. Co.
(N.D. Ohio 1980), 538 F. Supp. 1303.
Additionally, R.C. 4933.83, a part of the Certified Territory Act, gives each electric supplier exclusive rights to furnish electric service in certain areas or "certified territories." However, the constitutional rights and powers of municipalities to buy or sell electricity remain unaffected. R.C.4933.87[3]; see also, Cleveland Elec. Illum Co.v. Pub. Util. Comm. (1996), 76 Ohio St.3d 521, 526.
In this case, appellees purchase electric energy to supply to their citizens, a common way for many electric companies to obtain the electric energy needed. We can find nothing which requires that they actually manufacture the electric energy produced. Likewise, nothing in the Ohio Constitution or Ohio statutory law prohibits municipalities from purchasing more electric than their residents need and, subject to the fifty percent limitation, selling such surplus to non-inhabitants which have no valid contract with another supplier. Therefore, the trial court did not err in determining that appellees have a right to sell purchased electric energy as surplus.
Accordingly, appellant's second assignment of error is not well-taken.
 III.
Appellant, in its third assignment of error, contends that the trial court improperly dismissed the action when the complaint contained factual allegations which would support a viable claim. We agree.
In order for a motion to dismiss to be granted in a civil case, "`it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.'"Cleveland Elec. Illum. Co. v. Pub. Util. Comm. (1996),76 Ohio St.3d 521, 524 quoting O'Brien v. UniversityCommunity Tenants Union, Inc. (1975), 42 Ohio St.2d 242. In ruling on the motion to dismiss, all material factual allegations in the complaint must be taken as true. Vail v. PlainDealer Publishing Co. (1995), 72 Ohio St.3d 279, 280.
Appellant's third claim alleges that appellees' sale of electricity to Chase Brass will exceed the fifty percent limit imposed by Article XVIII, Section 6. For the purpose of a motion to dismiss, we must accept this allegation as true. Consequently, appellant has set forth sufficient facts to overcome a motion to dismiss. Therefore, the trial court erred in determining that, based only upon the pleadings, all of appellant's claims fail on the merits.
Accordingly, appellant's third assignment of error is well-taken.
The judgment of the Williams County Court of Common Pleas is reversed and remanded for proceedings consistent with this decision. Court costs of this appeal are assessed to appellees.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 Melvin L. Resnick, J.
 James R. Sherck, J.
CONCUR.
[1] The final seven claims included: the first, second and third claims of the original complaint, and the eighth, ninth, tenth and eleventh claims of the supplemental complaint.
[2] R.C. 2721.03 provides, in relevant part: any person * * * whose rights, status, or other legal relations are affected by a * * * municipal ordinance, * * * contract, or franchise * * * may have determined any question of construction or validity arising under such * * * ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."
[3] R.C. 4933.87 provides, in pertinent part, that "[n]othing contained in sections 4933.81 to 4933.90 of the Revised Code shall be construed to affect the right of municipal corporations to generate, transmit, distribute, or sell electric energy."